

The following constitutes the order of the Court.
Signed: June 17, 2021

_____
M. Elaine Hammond
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>Gregory R. Dougald<br><br>　　　　　　　　Debtor. | Case No. 20-50454 MEH<br><br>Chapter 13<br><br>Video Hearing<br>Date:　May 20, 2021<br>Time:　1:30 p.m. |

## ORDER DENYING PLAN CONFIRMATION

The court held a contested confirmation hearing on Debtor's Fourth Amended Plan (the "Plan"). The Chapter 13 Trustee filed an objection to confirmation, and creditor Kate Doe also filed its own objection. The matter was heard on May 20, 2021 and taken under submission.

Debtor proposes to fund his Plan through monthly payments, plus liquidation of funds in an exempt retirement account in month 57. The crux of Debtor and Doe's dispute is differing analyses of the "best interest of the creditors" test pursuant to § 1325(a)(4).[1]

For the reasons set forth below, I find Debtor's Plan cannot be confirmed as it does not satisfy § 1325(a)(4).

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 et seq., and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

1

## JURISDICTION

This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

## ANALYSIS

Confirmation of a Chapter 13 plan is governed by § 1325. The court shall confirm a plan if each of the requirements of § 1325 are met. The debtor has the burden to prove that each requirement is met. *Meyer v. Hill (In re Hill),* 268 B.R. 548, 552 (9th Cir. BAP 2001).

Section 1325(a)(4) requires, as of the effective date of the plan, the value of plan distributions to unsecured creditors be at least the amount that would be paid if the debtor's estate were liquidated under Chapter 7. This is referred to as the "best interest of the creditors" test.

"Two separate calculations must be performed to determine whether a debtor's proposed plan satisfies § 1325(a)(4)." *In re Messer*, 2014 WL 643712, at *3 (B.A.P. 9th Cir. Feb. 19, 2014).

"First, the bankruptcy court must measure 'the value, as of the effective date of the plan, of property to be distributed as to each allowed unsecured claim.'" *Id.* (citing *Jensen v. Dunivent (In re Dewey),* 237 B.R. 783, 788 (10th Cir. BAP 1999). "Since plans usually involve monthly payments to be made over time, the bankruptcy court must determine the present value of the property to be distributed to unsecured creditors through the plan—the stream of payments to creditors—as of the effective date of the plan." *Id*. (citing *In re Gibson*, 415 B.R. 735, 737 (Bankr. D. Ariz. 2009).

Second, the court must calculate the amount that would be paid on each claim if the estate of the debtor were liquidated under Chapter 7 on the effective date of the plan. *Id*. at *4.

I.      Chapter 13 Plan Valuation

Debtor's Plan provides for monthly plan payments totaling $69,600 and for liquidation of retirement funds (and possibly other assets) for an estimated $295,350 lump sum payment in month 57 of the Plan. This results in a total distribution of $364,950.

To determine the amount available for general unsecured claims, administrative fees and priority claims must be deducted. The parties agree to the following amounts:

- Chapter 13 attorney's fees of $8,000 if paid through the Chapter 13 Plan and
- Priority tax claims of $91,472.

Doe objects to three amounts: first, Doe asserts the Chapter 13 Trustee fees will be less than the 10% ($36,495) Debtor projects; second, Doe argues the Debtor will owe taxes and fees when it liquidates the retirement account, and that such costs will have to be paid as priority claims during the Plan; and third, Doe asserts the net present value of the total plan distributions must be calculated.

First, regarding the Chapter 13 Trustee fees, Doe's expert admitted the fees can be as high as 10%, which is the amount Debtor used. As the Trustee's fee on funds received has been 10% for several years, I find 10% to be an appropriate percentage to apply.

As to the early withdrawal from the retirement account, neither party submitted any authority on the issue nor offered any evidence supporting their assertions. Debtor concedes there may be taxes, fees, and possible penalties, but asserts the costs would be paid following Plan completion when Debtor files his tax returns. At the hearing, the Chapter 13 Trustee agreed the taxes and penalties would be post-confirmation tax liabilities and would not be paid by the Trustee. Thus, I find the fees and tax liabilities associated with liquidation of retirement funds will not be treated as a priority claim in Debtor's Plan.

Deducting these amounts leaves $228,983 for distribution on general unsecured claims. Regardless, pursuant to section 7.01 of the Plan, general unsecured creditors are guaranteed at least $232,000.

Therefore, the total value of distributions made to general unsecured creditors is $232,000.

A. **Net Present Value**

Doe asserts the net present value of total distributions under the Plan must be calculated, and that the net present value must be greater than what creditors would receive in a hypothetical Chapter 7 liquidation. This is consistent with the BAP's analysis in *Messer*.

Doe relies on *Till v. SCS Credit Corp.*, 541 U.S. 465, 474 (2004), for further analysis. In *Till*, the Supreme Court's primary holding was that a formula approach was an appropriate method of determining an adequate rate of interest on a cram down loan. But, the Supreme Court provided further guidance to bankruptcy courts. The Court stated that "the Bankruptcy Code includes numerous provisions that, like the cramdown provision, require a court to 'discoun[t] ... [a] stream of deferred payments back to the[ir] present dollar value,' [citation omitted] to ensure that a creditor receives at least the value of its claim." *Id.* at 474. Then, in a related footnote, the Court specifically referenced § 1325(a)(4) as a Code section requiring payment of property whose "value, as of the effective date of the plan" equals or exceeds the value of the creditor's claim. *Id.* at n. 10.

This analysis has been applied by other courts. In *In re Hockenberry*, 457 B.R. 646, 648 (Bankr. S.D. Ohio 2011), the debtor proposed a Chapter 11 plan of reorganization, and a creditor objected on the basis that the delayed payments caused the plan to violate § 1129(a)(7), which demands a "best interests of the creditors" test in Chapter 11 cases. The court cited to *Till* and held that in order to determine the value of the plan payments as of the effective date, "the Court must discount them to their net present value as of the Amended Plan's effective date." *Id.* at 653.

Further, in *In re Evans*, the debtor proposed to pay his unsecured creditors 100% of their allowed claims through monthly payments spread over 36 consecutive months. *In re Evans*, No. 10-80446C-13D, 2010 WL 2976165, at *1 (Bankr. M.D.N.C. July 28, 2010). The

Case: 20-50454   Doc# 156   Filed: 06/17/21   Entered: 06/17/21 17:09:59   Page 4 of 10

court stated "[u]nder section 1325(a)(4), it is not enough that the sum total of deferred payments offered the unsecured creditors is equal to the amount the creditor would have received in a chapter 7 liquidation." *Id*. at *3. Rather, "[s]ection 1325(a)(4) dictates that the chapter 13 plan offer the holder of each allowed unsecured claim property, including deferred payments, of a *present* value not less than the liquidation value of such claim." *Id*. (citing 8 *Collier on Bankruptcy* ¶ 1325.05[2][b] (16th ed. 2010)) (emphasis in original).

I agree with the preceding analysis. In most chapter 13 cases, an objection is not raised regarding net present value, but here, the objection is asserted.

In calculating net present value, the first question is what discount rate should be applied. Doe asserts the plan disbursements should be discounted by 5.25%, the prime plus rate, or 8.25%, the prime plus rate further adjusted for increased risks alleged to exist in this case. Dkt. #145 (Exhibit B) Debtor did not offer a discount rate, asserting instead that the federal interest rate is paid as interest on claims in a 100% plan. This is not the issue raised in Doe's objection.[2] As between the two discount rates provided, I need not decide which is appropriate as application of either rate results in the present value of the Plan being less than the Chapter 7 liquidation value.

II.  Hypothetical Chapter 7 Liquidation

The parties agree to nearly all the assets' liquidation values. There are two main issues regarding this calculation: the first issue concerns a bail bond refund received by Debtor's spouse, and the second issue is whether Chapter 13 attorneys' fees are included.

**A.  Debtor's Bail Bond**

In Debtor's Amended Schedule A/B filed on March 25, 2021, on line 18, the Debtor listed a bail bond receivable in the amount of $75,000. (Dkt. #124) However, Debtor's most recently filed Amended Schedule A/B, Debtor states there is no bail bond. (Dkt. #138)

---

[2] Debtor's further request at the hearing that an evidentiary hearing be held if the court determines that *Till* applies is untimely as this issue was asserted in Doe's objection.

In her declaration, Debtor's spouse stated she received the refund check after Debtor was taken into custody. (Dkt. #139) She also stated she used the funds as follows:

- $40,000 to buy a mobile home where she currently resides[3]
- $6,000 to pay the mortgage on their home (now being leased)
- $2,000 to pay for landscaping and utilities for Debtor's home
- $4,000 for relocation expenses
- $4,000 for medical expenses and doctor visits
- $8,000 for specialized nutritional supplements

This leaves $11,000 of the $75,000 remaining.

Section 363(b)(1) allows the trustee (here the Debtor[4]) to use, sell, or lease, other than in the ordinary course of business, property of the estate. Doe argues that because none of the uses of the bail bond refund were in the ordinary course of business, Debtor should have received court authorization before using the cash. Doe asserts the Debtor did not seek court approval as required by § 363(b)(1), and thus, the $75,000 should be refunded to the estate.

Debtor responds that purchase of the mobile home was never a secret. *See* Dkt. #4 (page 28), Dkt. #37 (page 15) Dkt. #85-1 (page 1) Dkt. #102 (pages 1 and 7), Dkt. #110 (page 4), Dkt. #111 (page 1). Debtor also listed the mobile home on the most recent Amended Schedule A/B (Dkt. #138) with a value of $32,000. Debtor argues court approval was not necessary because the bail bond was already liquidated as cash and was used for his personal affairs. Doe's objection to Debtor's preconfirmation use of funds was raised in an objection and is not a request for relief. As it is also not a confirmation issue it is not addressed at this time. Therefore, in the Chapter 7 liquidation analysis, I find the Debtor's cash as of the effective date is as stated on the most recent Amended Schedules A/B. (Dkt. #138)

---

[3] Debtor listed the mobile home on most recent Amended Schedule A/B (Dkt. #138) with a value of $32,000.
[4] In a Chapter 13 case, a debtor may exercise the powers of a trustee. *See* § 1303.

### B. Chapter 13 Attorneys' Fees

Doe argues that Chapter 13 attorney's fees and expenses are not priority claims included in a hypothetical Chapter 7 liquidation analysis. In support, Doe relies on *In re Goudreau*. 530 B.R. 783, 787–88 (Bankr. D. Kan. 2015) ("[T]he Debtors' suggestion that the hypothetical liquidation should incorporate the assumption that the Chapter 7 liquidation occurs after conversion from Chapter 13 and thereby includes the payment of Chapter 13 fees as an administrative expense is not supported by any authority.") Debtor responds that because of the work provided in the Chapter 13, the value of the estate has increased, and the fees would be given priority.

Integral to the holding in *Goudreau* is the finding that the "effective date" of the plan is the petition date. The court reached this conclusion on two grounds: first, the filing date allows a court to make the Chapter 7 analysis using the information in the original schedules, and second, focusing on the date of filing is consistent with the purpose of the best interests of creditors requirement to assure that unsecured creditors are not disadvantaged because the debtor chose to file the petition under Chapter 13 rather than Chapter 7. *Id*. at 788–89.

In conclusion, the court held that Chapter 13 attorney fees may not be subtracted from the net value of the debtors' non-exempt assets for purposes of the Chapter 7 liquidation test because if debtors "had filed a Chapter 7 case rather than a Chapter 13 case, Debtors would not have incurred Chapter 13 attorney fees, so such fees would not have been an allowed claim in the hypothetical Chapter 7 case." There is additional authority agreeing with this proposition: that the best interests of creditors test, when calculating the Chapter 13 value must consider the Chapter 13 administrative expenses, and conversely, must consider the Chapter 7 administrative expenses when calculating the hypothetical Chapter 7 case. *See Midstate Finance Company, Inc. v. Peoples*, 587 B.R. 685 (E.D. Tenn. 2018); *In re Dewey*, 237 B.R. 783 (B.A.P. 10th Cir. 1999); *In re Scholl*, 605 B.R. 163 (Bankr. S.D. Ohio 2019); and *In re Cole*, 548 B.R. 132 (Bankr. E.D. Va. 2016).

A recent Bankruptcy Court decision from Wisconsin declined to follow the reasoning in *Goudreau*. In *In re Buettner*, 625 B.R. 78, 80 (Bankr. E.D. Wis. 2021), the court held the

Case: 20-50454    Doc# 156    Filed: 06/17/21    Entered: 06/17/21 17:09:59    Page 7 of 10

effective date is the confirmation date not the petition date. The *Buettner* court reached this decision based on a plain reading of the statute: "In this context, 'effective' plainly means 'operative' (citations omitted) The plan is operative when its terms are binding on the debtor and creditors—i.e., when the court confirms it." The court also recognized that the Supreme Court has twice treated "the effective date" as "when the plan is confirmed." First, in *Hamilton v. Lanning*, the Court stated, "[Section] 1325(b)(1) directs courts to determine projected disposable income 'as of the effective date of the plan,' which is the date on which the plan is confirmed and becomes binding." 560 U.S. 505, 518 (2010).

Second, in *Rake v. Wade*, the Court explained that § 1325(a)(5)(B)(ii) guarantees that property distributed under a plan on account of a claim ... equal[s] the present dollar value of such claim as of the confirmation date." 508 U.S. 464, 469 (1993). The *Buettner* court held that "whether payment of a chapter 13 debtor's attorney's fees is factored into the chapter 7 side of the liquidation test depends on whether the fees are an allowed administrative expense on the plan's effective date, i.e., on the confirmation date." *Buettner*, 625 B.R. at 82.

Authority from the Ninth Circuit BAP is consistent with *Buettner*. In *In re Messer*, the BAP recognized the effective date "has been interpreted to mean the date the plan becomes binding on the parties", and that "[g]enerally, a plan becomes binding on the parties upon confirmation…" *In re Messer*, 2014 WL 643712, at *4; *see also Countrywide Home Loans, Inc. v. Hoopai (In re Hoopai)*, 581 F.3d 1090, 1100–01 (9th Cir.2009). Thus, because in the Ninth Circuit the effective date of a plan is the confirmation date, it follows that the Chapter 13 attorneys' fees should be deducted from the Chapter 7 liquidation calculation.

III.   Final Calculation

In summary:
- The Plan provides for $364,950 in total disbursements.
- After deducting for administrative fees and priority tax claims, Debtor has agreed in the Plan that $232,000 will be available for general unsecured claims.

- The net present value of $232,000[5] at the 5.25% rate is $180,839.26, and at 8.25% is $156,920.19.
- The amount available to general unsecured creditors in a hypothetical chapter 7 liquidation as of the effective date of the plan is $191,729.07.
- The hypothetical chapter 7 liquidation amount is greater than the net present value of the $232,000 provided in the chapter 13 plan.

As such, Debtor's Plan fails to comply with the "best interests of the creditors test" of § 1325(a)(4) and cannot be confirmed.

## CONCLUSION

Because Debtor's Plan does not satisfy § 1325(a)(4), confirmation of the Plan is DENIED. Doe also requests the court to convert this Chapter 13 case to one under Chapter 7 if the plan is not confirmed. As there is no motion to convert before me, I decline to address conversion *sua sponte*.

**END OF ORDER**

COURT SERVICE LIST

---

[5] The distribution to the general unsecured creditor will begin in month 57 after the administrative and priority tax claims are paid, resulting in payments of $224,050 in month 57 and $2,650 in months 58, 59, and 60.

**Via ECF:**

All ECF Recipients