Gregg S. Kleiner, State Bar No. 141311
RINCON LAW LLP
268 Bush Street, Suite 3335
San Francisco, CA 94104
Telephone No.: 415-672-5991
Facsimile No.: 415-680-1712
Email: gkleiner@rinconlawllp.com

Attorneys for Plaintiff, Fred Hjelmeset,
Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| In re | Case No. 20-50454 MEH |
|---|---|
| GREGORY R. DOUGALD *aka* GREGORY ROSS DOUGALD, | Chapter 7<br>Hon. M. Elaine Hammond |
| Debtor. | |
| | |
| FRED HJELMESET,<br>Chapter 7 Trustee, | Adversary Proceeding No. |
| Plaintiff, | **COMPLAINT FOR BREACH OF CONTRACT** |
| v. | |
| GHAZI FARWANA, | |
| Defendant. | |

Plaintiff Fred Hjelmeset, Chapter 7 Trustee of the estate of Gregory R. Dougald *aka* Gregory Ross Dougald ("**Plaintiff**"), alleges as follows:

1.     This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. Sections 151, 157(b) and 1334, and Rule 501-1 of the Bankruptcy Rules of the Northern District of California.

2. This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. Sections 157(b)(2)(A), (N) and (O), and the Federal Rules of Bankruptcy Procedure 7001(1), (2) and (9).

3. Venue is proper under 28 U.S.C. Section 1409. The agreement that is at the heart of the dispute provides that the Bankruptcy Court will retain jurisdiction over breaches and defaults under the agreement.

4. Plaintiff consents to the Bankruptcy Court entering final orders and judgments in this case.

**BACKGROUND**

5. The Debtor filed a Voluntary Petition under Chapter 13 of the Bankruptcy Code on March 6, 2020. On October 18, 2021, the Bankruptcy Court converted the Debtor's case from Chapter 13 to Chapter 7 and the Plaintiff was appointed Trustee of the Debtor's estate.

6. Among the scheduled assets of the Debtor's bankruptcy estate was residential real property commonly referred to as 6217 Cahalan Avenue, San Jose, CA 95123 ("**Property**").

7. On or about April 19, 2022, the Plaintiff, as seller, entered into a purchase and sale agreement for the Property. The buyer under that agreement was Ghazi Farwana ("**Defendant**"). A true and correct copy of the fully executed "California Residential Purchase Agreement and Joint Escrow Instructions" "Purchase Agreement" is attached to this Complaint as **Exhibit A.** The Purchase Agreement includes a standard provision at Paragraph 29 to allow a buyer of property to limit their potential damages for breach of the sale agreement to three percent (3%) of the gross purchase price. The Defendant elected *not to include* the liquidated damage provision found in Paragraph 29 as part of his offer under the Purchase Agreement.

8. On April 19, 2022, the Plaintiff and Defendant entered into an agreement entitled "Seller's Counter-Offer to Purchase Contract for 6217 Cahalan Ave, San Jose, CA 95123" (the "**Counter-Offer**", along with Purchase Agreement are collectively referred to as the "**Agreement**"). A true and correct copy of the fully executed Counter-Offer is attached to this Complaint as **Exhibit B.** The Counter-Offer was expressly made part Purchase Agreement. Under the provisions of the Agreement, the Defendant agreed, and the Trustee accepted, subject to overbid and Bankruptcy Court approval, to purchase the Property for $1,575,000.

9. The Agreement includes a provision by which the prevailing party is entitled to attorney fees and costs which provision provides, in relevant part as follows:

> 22. ATTORNEY FEES AND COSTS: In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller…..

10. The Counter-Offer provides, among other things, the following, that the Defendant: (i) waived "…all contingencies in the Agreement and this Counter-Offer concerning or related to the Property…" and (ii) affirmatively consents to the Bankruptcy Court having "…exclusive jurisdiction over any dispute arising out of the Counter-Offer and the Agreement, including, but not limited to the interpretation and enforcement of Counter-Offer and the Agreement…":

> 11. Paragraph 14 (B) of the Agreement is deleted in its entirety and revised as follows:
>
> (a) "By no later than 5:00 pm, PDT, April 20, 2022, Buyer shall withdraw all contingencies in the Agreement and this Counter-Offer concerning or related to the Property and deliver the $45,000 initial deposit amount to Escrow;
>
> 13. Paragraphs 30 and 31 of the Agreement are deleted and replaced as follows: "This Agreement shall be construed in accordance with the laws of the State of California, except to the extent it is controlled by the federal bankruptcy laws. The parties agree that the Court shall have exclusive jurisdiction over any dispute arising out of the Counter-Offer and the Agreement, including, but not limited to the interpretation and enforcement of Counter-Offer and the Agreement, and, if necessary, to effect the Court's jurisdiction, and by your signature on this Agreement, you hereby stipulate to an order providing for such jurisdiction.

11. As part of the Agreement, the Defendant tendered to the title company, Lawyers Title, a deposit in the amount of $45,000.

12. In conformity with the Agreement, the sale was noticed to creditors and parties-in-interest and was subject to higher and better offer. No overbids were received by the Plaintiff.

/ / /

13.     On May 16, 2022, the Bankruptcy Court entered its order authorizing the Trustee to sell the Property to the Defendant for $1,575,000, "As Is-Where Is," with no representations or warranties. A copy of the sale order, Docket 339, is attached to this Complaint as **Exhibit C** (the "Sale Order").  Upon entry of the Sale Order, Plaintiff satisfied all conditions necessary for him to consummate the sale and no contingencies remained to be satisfied by Plaintiff.

14.     The Trustee is informed and believes and on that basis states that on May 17, 2022, the day after the Sale Order was entered, the Defendant's real estate agent, Yasir Aladdin of Compass, sent a request to cancel the sale of the Property to the Plaintiff's real estate agent.

15.     After it became clear that the Defendant would not follow through with his obligations under the Agreement, the Plaintiff sought to mitigate the bankruptcy estate's damages. Plaintiff put the Property back on the market and received multiple offers. Subject to Bankruptcy Court approval and overbid, the Plaintiff accepted a purchase offer from Edward Y. Chiao and Susie J. Kim for $1,525,000. In conformity with the Agreement, the Chiao/Kim sale was noticed to creditors and parties-in-interest and was subject to higher and better offer. No overbids were received by the Plaintiff.

16.     On June 15, 2022, the Bankruptcy Court authorized the Trustee to sell the Property to Edward Y. Chiao and Susie J. Kim for $1,525,000. After the Bankruptcy Court entered its order authorizing the Trustee to complete the sale, buyers Chiao and Kim sought to terminate the sale agreement.

17.     Seeking to mitigate the estate's damages following the breach of the Chiao/Kim agreement, the Trustee put the Property back on the market and received a purchase offer from Amelle A. Stein for $1,300,000. In conformity with the Agreement, the Stein sale was noticed to creditors and parties-in-interest and was subject to higher and better offer. No overbids were received by the Plaintiff. The sale to Stein closed on September 2, 2022.

18.     Had the Defendant consummated the sale with the Trustee as required under the provisions of the Agreement, the Trustee would have received $275,000 more in sale proceeds than he received from the Stein sale.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

19. Plaintiff reiterates the allegations set forth in paragraphs 1 through 18 above and incorporates them by reference.

20. On May 16, 2022, the Bankruptcy Court authorized the Trustee to enter into the Agreement. The Agreement required the Defendant to deliver to the Plaintiff the sum of $1,575,000 as the purchase price for the Property.

21. The Plaintiff has performed all conditions, covenants and promises required to be performed under the Agreement. The Defendant has breached the Agreement by failing to pay the Plaintiff the sum of $1,575,000. The Plaintiff has mitigated the estate's damages by selling the Property, which sale is subject to overbid, to Amelle A. Stein for $1,300,000. The Defendant's breach of the Agreement has resulted in damages to the Plaintiff in the amount of $275,000, plus attorney fees, costs and additional sums related to remarketing the Property for sale and obtaining Bankruptcy Court approval for the ultimate sale of the Property.

22. The Agreement provides that, in the event of a breach, the Defendant is obligated to pay the Plaintiff's reasonable attorney fees and costs. In seeking to collect the sums due under the Agreement, the Plaintiff has already incurred fees and costs related to mitigating its damages through the resale of the Property and drafting and filing this Complaint.

WHEREFORE, Plaintiff requests judgment as set forth below.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests judgment against the Defendant as follows:

A. For a money judgment against the Defendant in the amount of $275,000, for damages related to the Defendant's breach of his obligations under the Agreement;

B. For pre-judgment interest at the rate of 10% per annum from the date of the breach, May 22, 2022;

C. For attorney fees and costs as provided by the Agreement;

D. For costs of suit and collection; and

E.      For such other and further relief as the Court deems just and proper.

DATED:   October 3, 2022           RINCON LAW, LLP


                                    By:  */s/ Gregg S. Kleiner*
                                         Gregg S. Kleiner
                                         Attorneys for Plaintiff Fred Hjelmeset,
                                         Chapter 7 Trustee

DocuSign Envelope ID: EF98AEC7-E12E-4DD0-8C9A-6FBA8A573C29

 **COMPASS**

# CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT
# AND JOINT ESCROW INSTRUCTIONS
### (C.A.R. FORM RPA, 12/21)

Date Prepared: *April 19, 2022*

1. **OFFER:**
   A. **THIS IS AN OFFER FROM** _____*Ghazi Farwana*_____ ("Buyer").
   B. **THE PROPERTY** to be acquired is _____*6217 Cahalan Ave*_____, situated
   in _____*San Jose*_____ (City), _____*Santa Clara*_____ (County), California, _*95123-4505*_ (Zip Code),
   Assessor's Parcel No(s). _____ ("Property").
   **(Postal/Mailing address may be different from city jurisdiction. Buyer is advised to investigate.)**
   C. **THE TERMS OF THE PURCHASE ARE SPECIFIED BELOW AND ON THE FOLLOWING PAGES.**
   D. Buyer and Seller are referred to herein as the "Parties." Brokers and Agents are **not** Parties to this Agreement.

2. **AGENCY:**
   A. **DISCLOSURE:** The Parties each acknowledge receipt of a "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD) if represented by a real estate licensee. Buyer's Agent is not legally required to give to Seller's Agent the AD form Signed by Buyer. Seller's Agent is not legally obligated to give to Buyer's Agent the AD form Signed by Seller.
   B. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction.
   **Seller's Brokerage Firm** _*Intero Real Estate Services (Off.Lic#01354442)*_ License Number _____
   Is the broker of (check one): [X] the Seller; or [ ] both the Buyer and Seller (Dual Agent).
   Seller's Agent _*Chris Buchanan 02068778 & Sean Buchanan 02078686*_ License Number _____
   Is (check one): [X] the Seller's Agent. (Salesperson or broker associate); or [ ] both the Buyer's and Seller's Agent (Dual Agent).
   **Buyer's Brokerage Firm** _*Compass*_ License Number _*01527235*_
   Is (check one): [X] the Buyer; or [ ] both the Buyer and Seller (Dual Agent).
   Buyer's Agent _*Yasir Aladdin*_ License Number _*02003197*_
   Is (check one): [X] the Buyer's Agent. (Salesperson or broker associate); or [ ] both the Buyer's and Seller's Agent (Dual Agent).
   C. [ ] More than one Brokerage represents [ ] Seller, [ ] Buyer. See, Additional Broker Acknowledgement (C.A.R. Form ABA).
   D. **POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties acknowledge receipt of a [X] "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

3. **TERMS OF PURCHASE AND ALLOCATION OF COSTS:** The items in this paragraph are contractual terms of the Agreement. Referenced paragraphs provide further explanation. This form is 16 pages. The Parties are advised to read all 16 pages.

| | Paragraph # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| A | 5, 5B (cash) | **Purchase Price** | $ *1,575,000.00* | [ ] All Cash |
| B | | **Close of Escrow (COE)** | [X] *45* Days after Acceptance OR on [ ] _____ (date) | |
| C | 32A | **Expiration of Offer** | 3 calendar days after all Buyer Signature(s) or *April 20, 2022* _____ (date), at 5PM or _*5*_ [ ] AM/[X] PM | |
| D(1) | 5A(1) | **Initial Deposit Amount** | $ *45,000.00* ( *2.9* % of purchase price) (% number above is for calculation purposes and is not a contractual term) | within 3 (or _*1*_ ) business days after Acceptance by wire transfer OR [ ] _____ |
| D(2) | 5A(2) | [ ] **Increased Deposit** (Money placed into escrow after the initial deposit. Use form DID at time increased deposit is made.) | $ _____ ( _____ % of purchase price) (% number above is for calculation purposes and is not a contractual term) | Upon removal of all contingencies OR [ ] _____ (date) OR [ ] _____ |
| E(1) | 5C(1) | **Loan Amount(s):** First Interest Rate<br><br>Points<br><br>If FHA or VA checked, Deliver list of lender required repairs | $ *1,338,750.00* ( *85.0* % of purchase price) Fixed rate or [ ] Initial adjustable rate not to exceed _____ % Buyer to pay zero points or up to _____% of the loan amount<br><br>17 (or _____ ) Days after Acceptance | Conventional or, if checked, [ ] FHA [ ] VA (CAR Forms FVAC, HID attached) [ ] Seller Financing [ ] Other: _____ |
| E(2) | 5C(2) | Additional Financed Amount Interest Rate<br><br>Points | $ _____ ( _____ % of purchase price) Fixed rate or [ ] Initial adjustable rate not to exceed _____ % Buyer to pay zero points or up to _____% of the loan amount | Conventional or, if checked, [ ] Seller Financing [ ] Other: _____ |
| E(3) | 7A | **Occupancy Type** | Primary, or if checked, [ ] Secondary [ ] Investment | |
| F | 5D | **Balance of Down Payment** | $ *191,250.00* | |
| | | PURCHASE PRICE TOTAL | $ *1,575,000.00* | |

© 2021, California Association of REALTORS®, Inc.

**RPA 12/21 (PAGE 1 OF 16)**   Buyer's Initials _*f*_ / _____   Seller's Initials _*FHBT*_ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 1 OF 16)**

**EXHIBIT A**

Property Address: **6217 Cahalan Ave, San Jose, CA 95123-4505**          Date: **April 19, 2022**

|  | Paragraph # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| **G(1)** | 5E | **Seller Credit, if any, to Buyer** | ☐ $ _____ (_____% of purchase price) (% number above is for calculation purposes and is not a contractual term) | Seller credit to be applied to closing costs OR ☐ Other: _____ |
| **G(2)** | | **ADDITIONAL FINANCE TERMS:** _____ _____ | | |
| **H(1)** | 5B | **Verification of All Cash** (sufficient funds) | Attached to the offer or ☐ 3 (or **0** ) Days after Acceptance | |
| **H(2)** | 6A | **Verification of Down Payment and Closing Costs** | Attached to the offer or ☐ 3 (or **0** ) Days after Acceptance | |
| **H(3)** | 6B | **Verification of Loan Application** | Attached to the offer or ☐ 3 (or **0** ) Days after Acceptance | ☐ Prequalification ☐ Preapproval ☒ Fully underwritten preapproval |
| **I** | | | Intentionally Left Blank | |
| **J** | 16 | **Final Verification of Condition** | 5 (or _____) Days prior to COE | |
| **K** | 23 | **Assignment Request** | 17 (or _____) Days after Acceptance | |
| **L** | 8 | CONTINGENCIES | TIME TO REMOVE CONTINGENCIES | CONTINGENCY REMOVED |
| **L(1)** | 8A | **Loan(s)** | 17 (or _____) Days after Acceptance | ☒ No loan contingency |
| **L(2)** | 8B | **Appraisal:** Appraisal contingency based upon appraised value at a minimum of purchase price or ☐ $ _____ | 17 (or _____) Days after Acceptance | ☒ No appraisal contingency  Removal of appraisal contingency does not eliminate appraisal cancellation rights in FVAC. |
| **L(3)** | 8C, 12 | **Investigation of Property** | 17 (or _____) Days after Acceptance | REMOVAL OR WAIVER OF CONTINGENCY:  Any contingency in L(1)-L(7) may be removed or waived by checking the applicable box above or attaching a Contingency Removal (C.A.R. Form CR) and checking the applicable box therein. Removal or Waiver at time of offer is against Agent advice. See paragraph 8H.  ☒ **CR attached** |
| | | **Informational Access to Property** Buyer's right to access the Property for informational purposes is **NOT** a contingency, does **NOT** create cancellation rights, and applies even if contingencies are removed. | 17 (or _____) Days after Acceptance | |
| **L(4)** | 8D, 14A | **Review of Seller Documents** | 17 (or _____) Days after Acceptance, or 5 Days after receipt, whichever is later | |
| **L(5)** | 8E, 13A | **Preliminary ("Title") Report** | 17 (or _____) Days after Acceptance, or 5 Days after receipt, whichever is later | |
| **L(6)** | 8F, 11K | **Common Interest Disclosures** required by Civil Code § 4525 or this Agreement | 17 (or _____) Days after Acceptance, or 5 Days after receipt, whichever is later | |
| **L(7)** | 8G, 9B(6) | **Review of leased or liened items** (Such as for solar panels or propane tanks or PACE or HERO liens) | 17 (or _____) Days after Acceptance, or 5 Days after receipt, whichever is later | |
| **L(8)** | 8J | **Sale of Buyer's Property** Sale of Buyer's property is not a contingency, UNLESS checked here: ☐ **C.A.R. Form COP attached** | | |
| **M** | | Possession | Time for Performance | Additional Terms |
| **M(1)** | | **Time of Possession** | Upon notice of recordation, OR ☐ 6 PM or ☐ AM/ ☐ PM on date specified, as applicable, in 3M(2) or attached TOPA. | |
| **M(2)** | 7C | **Seller Occupied or Vacant units** | COE date or, if checked below, ☐ _____ days after COE (29 or fewer days) ☐ _____ days after COE (30 or more days) | C.A.R. Form SIP attached if 29 or fewer days. C.A.R. Form RLAS attached if 30 or more days. |
| **M(3)** | | **Tenant Occupied units** | See Tenant Occupied Property Addendum (C.A.R. form TOPA) | If tenant occupied ☐ TOPA or ☐ Other, attached |
| **N** | | Documents/Fees/Compliance | Time for Performance | |
| **N(1)** | 14A | Seller Delivery of Documents | 7 (or _____) Days after Acceptance | |
| **N(2)** | 19B | Sign and return Escrow Holder Provisions and Instructions | 5 (or _____) Days after receipt | |
| **N(3)** | 11K(2) | Time to pay fees for ordering HOA Documents | 3 (or _____) Days after Acceptance | |
| **N(4)** | 10B(1) | Install smoke alarm(s), CO detector(s), water heater bracing | 7 (or _____) Days after Acceptance | |
| **N(5)** | 28 | Evidence of representative authority | 3 Days after Acceptance | |
| **O** | | | Intentionally Left Blank | |

**RPA 12/21 (PAGE 2 OF 16)**          Buyer's Initials  _____ / _____          Seller's Initials FHBT _____ _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 2 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com          6217 Cahalan Ave



**EXHIBIT A**

Property Address: *6217 Cahalan Ave, San Jose, CA  95123-4505*                    Date: *April 19, 2022*

| P | Items Included and Excluded | | |
|---|---|---|---|
| **P(1)** | 9 | **Items Included - All items specified in Paragraph 9B are included and the following, if checked:** | |

[X] Stove(s), oven(s), stove/oven combo(s);
[X] Refrigerator(s);
[ ] Wine Refrigerator(s);
[ ] Washer(s);
[ ] Dryer(s);
[X] Dishwasher(s);
[X] Microwave(s);

[ ] Video doorbell(s);
[ ] Security camera equipment;
[ ] Security system(s)/alarm(s), other than separate video doorbell and camera equipment;
[ ] Smart home control devices;
[ ] Wall mounted brackets for video or audio equipment;

[ ] Above-ground pool(s) / [ ] spa(s);
[X] Bathroom mirrors, unless excluded below;
[ ] Electric car charging systems and stations;
[ ] Potted trees/shrubs;

**Additional Items included:**
[ ] _____
[ ] _____ .
[ ] _____
[ ] _____ .
[ ] _____
[ ] _____ .

| **P(2)** | 9 | **Excluded Items:** | |
|---|---|---|---|

[ ] _____ ;
[ ] _____ ;
[ ] _____ ;

| Q | Allocation of Costs | | |
|---|---|---|---|
| | **Paragraph #** | **Item Description** | **Who Pays** (if Both is checked, cost to be split equally unless Otherwise Agreed) | **Additional Terms** |

| | Paragraph # | Item Description | Who Pays | Additional Terms |
|---|---|---|---|---|
| **Q(1)** | 10A, 11A | Natural Hazard Zone Disclosure Report, including tax information | [ ] Buyer [X] Seller [ ] Both _____<br>_____<br>[ ] Provided by: *Sellers choice* | [ ] Environmental<br>[ ] Other _____ |
| **Q(2)** | | _____ Report | [ ] Buyer [ ] Seller [ ] Both _____ | |
| **Q(3)** | | _____ Report | [ ] Buyer [ ] Seller [ ] Both _____ | |
| **Q(4)** | 10B(1) | Smoke alarms, CO detectors, water heater bracing | [ ] Buyer [X] Seller [ ] Both _____ | |
| **Q(5)** | 10A 10B(2) | Government Required Point of Sale **inspections, reports** | [ ] Buyer [ ] Seller [ ] Both _____ | |
| **Q(6)** | 10B(2)(A) | Government Required Point of Sale **corrective/remedial actions** | [ ] Buyer [ ] Seller [ ] Both _____ | |
| **Q(7)** | 19B | Escrow Fees | [ ] Buyer [X] Seller [ ] Both _____<br>[ ] Each to pay their own fees | Escrow Holder:<br>*First American Title Company* |
| **Q(8)** | 13 | Owner's title insurance policy | [ ] Buyer [X] Seller [ ] Both _____ | Title Company (If different from Escrow Holder): |
| **Q(9)** | | Buyer's Lender title insurance policy | Buyer | Unless Otherwise Agreed, Buyer shall purchase any title insurance policy insuring Buyer's lender. |
| **Q(10)** | | County transfer tax, fees | [ ] Buyer [X] Seller [ ] Both _____ | |
| **Q(11)** | | City transfer tax, fees | [ ] Buyer [ ] Seller [X] Both _____ | |
| **Q(12)** | 11K(2) | HOA fee for preparing disclosures | Seller | |
| **Q(13)** | | HOA certification fee | Buyer | |
| **Q(14)** | | HOA transfer fees | [ ] Buyer [ ] Seller [ ] Both _____ | Unless Otherwise Agreed, Seller shall pay for separate HOA move-out fee and Buyer shall pay for separate move-in fee. Applies if separately billed or itemized with cost in transfer fee. |
| **Q(15)** | | Private transfer fees | Seller, or if checked, [ ] Buyer [ ] Both | |
| **Q(16)** | | _____ fees or costs | [ ] Buyer [ ] Seller [ ] Both _____ | |
| **Q(17)** | | _____ fees or costs | [ ] Buyer [ ] Seller [ ] Both _____ | |
| **Q(18)** | 10C | Home warranty plan: _____<br>_____<br>Issued by: *Buyers choice* | [X] Buyer [ ] Seller [ ] Both _____<br>[ ] Buyer waives home warranty plan | Cost not to exceed $ _____ . |

| R | OTHER TERMS: _____ |
|---|---|
| | _____ |
| | _____ |

**RPA 12/21 (PAGE 3 OF 16)**          Buyer's Initials _____ / _____          Seller's Initials *FHBT* / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 3 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201  www.lwolf.com          6217 Cahalan Ave

**EXHIBIT A**

DocuSign Envelope ID: EF98AEC7-E12E-4DD0-8C9A-6FBA8A573C29

Property Address: *6217 Cahalan Ave, San Jose, CA  95123-4505*                              Date: *April 19, 2022*

**4. PROPERTY ADDENDA AND ADVISORIES:** (check all that apply)

  **A. PROPERTY TYPE ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:

    ☐ Probate Agreement Purchase Addendum (C.A.R. Form PA-PA)
    ☐ Manufactured Home Purchase Addendum (C.A.R. Form MH-PA)
    ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA) (Should be checked whether current tenants will remain or not.)
    ☐ Tenancy in Common Purchase Addendum (C.A.R. Form TIC-PA)
    ☐ Stock Cooperative Purchase Addendum (C.A.R. Form COOP-PA)
    ☐ Other

  **B. OTHER ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:

    ☐ Addendum # _____ (C.A.R. Form ADM)      ☐ Short Sale Addendum (C.A.R. Form SSA)
    ☐ Back Up Offer Addendum (C.A.R. Form BUO)      ☐ Court Confirmation Addendum (C.A.R. Form CCA)
    ☐ Septic, Well, Property Monument and Propane Addendum (C.A.R. Form SWPI)
    ☐ Buyer Intent to Exchange Addendum (C.A.R. Form BXA)      ☐ Seller Intent to Exchange Addendum (C.A.R. Form SXA)
    ☐ Other _____      ☐ Other _____

  **C. BUYER AND SELLER ADVISORIES: (Note: All Advisories below are provided for reference purposes only and are not intended to be incorporated into this Agreement.)**

    ☒ Buyer's Investigation Advisory (C.A.R. Form BIA)      ☒ Fair Housing and Discrimination Advisory (C.A.R. Form FHDA)
    ☒ Wire Fraud Advisory (C.A.R. Form WFA)      ☒ Cal. Consumer Privacy Act Advisory (C.A.R. Form CCPA)
    (Parties may also receive a privacy disclosure from their own Agent.)
    ☐ Wildfire Disaster Advisory (C.A.R. Form WFDA)      ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
    ☐ Trust Advisory (C.A.R. Form TA)      ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)
    ☐ REO Advisory (C.A.R. Form REO)      ☐ Probate Advisory (C.A.R. Form PA)
    ☐ Other _____

**5. ADDITIONAL TERMS AFFECTING PURCHASE PRICE:** Buyer represents that funds will be good when deposited with Escrow Holder.

  **A. DEPOSIT:**

    (1) **INITIAL DEPOSIT:** Buyer shall deliver deposit directly to Escrow Holder. If a method other than wire transfer is specified in **paragraph 3D(1)** and such method is unacceptable to Escrow Holder, then upon notice from Escrow Holder, delivery shall be by wire transfer.

    (2) **INCREASED DEPOSIT:** Increased deposit specified in **paragraph 3D(2)** is to be delivered to Escrow Holder in the same manner as the Initial Deposit. If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount by signing a new liquidated damages clause (C.A.R. Form DID) at the time the increased deposit is delivered to Escrow Holder.

    (3) **RETENTION OF DEPOSIT: Paragraph 29, if initialed by all Parties or otherwise incorporated into this Agreement, specifies a remedy for Buyer's default. Buyer and Seller are advised to consult with a qualified California real estate attorney before adding any other clause providing a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase. Any such clause shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.**

  **B. ALL CASH OFFER:** If an all cash offer is specified in **paragraph 3A**, no loan is needed to purchase the Property. This Agreement is NOT contingent on Buyer obtaining a loan. Buyer shall, within the time specified in **paragraph 3H(1)**, Deliver written verification of funds sufficient for the purchase price and closing costs.

  **C. LOAN(S):**

    (1) **FIRST LOAN:** This loan will provide for conventional financing **UNLESS** FHA, VA, Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(1)**.

    (2) **ADDITIONAL FINANCED AMOUNT:** If an additional financed amount is specified in **paragraph 3E(2)**, that amount will provide for conventional financing **UNLESS** Seller Financing (C.A.R. Form SFA), or Other is checked in **paragraph 3E(2)**.

    (3) **BUYER'S LOAN STATUS:** Buyer authorizes Seller and Seller's Authorized Agent to contact Buyer's lender(s) to determine the status of any Buyer's loan specified in **paragraph 3E**, or any alternate loan Buyer pursues, whether or not a contingency of this Agreement. If the contact information for Buyer's lender(s) is different from that provided under the terms of **paragraph 6B**, Buyer shall Deliver the updated contact information within 1 Day of Seller's request.

    (4) **FHA/VA: If FHA or VA is checked in paragraph 3E(1)**, a FHA/VA amendatory clause (C.A.R. Form FVAC) shall be incorporated and Signed by all Parties. Buyer shall, within the time specified in **paragraph 3E(1)**, Deliver to Seller written notice (C.A.R. Form RR or AEA) **(i)** of any lender requirements that Buyer requests Seller to pay for or otherwise correct or **(ii)** that there are no lender requirements. Notwithstanding Seller's agreement that Buyer may obtain FHA or VA financing, Seller has no obligation to pay or satisfy any or all lender requirements unless agreed in writing.

  **D. BALANCE OF PURCHASE PRICE (DOWN PAYMENT, paragraph 3F) (including all-cash funds)** to be deposited with Escrow Holder pursuant to Escrow Holder instructions.

  **E. LIMITS ON CREDITS TO BUYER:** Any credit to Buyer as specified in **paragraph 3G(1)** or Otherwise Agreed, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender, if any, and made at Close Of Escrow. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then **(i)** the Contractual Credit from Seller shall be reduced to the Lender Allowable Credit, and **(ii)** in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**6. ADDITIONAL FINANCING TERMS:**

  **A. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Written verification of Buyer's down payment and closing costs, within the time specified in **paragraph 3H(2)** may be made by Buyer or Buyer's lender or loan broker pursuant to **paragraph 6B**.

  **B. VERIFICATION OF LOAN APPLICATIONS:** Buyer shall Deliver to Seller, within the time specified in **paragraph 3H(3)** a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in **paragraph 3E**. If any loan specified in **paragraph 3E** is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying ~~rate~~ e initial loan rate.

RPA 12/21 (PAGE 4 OF 16)      Buyer's Initials _____ / _____      Seller's Initials *FHBT* / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 4 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201  www.lwolf.com      6217 Cahalan Ave

**EXHIBIT A**

Case: 20-50454      Doc# 368      Filed: 10/03/22      Entered: 10/03/22 13:27:29      Page 10 of 32

**C.**  **BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including, but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price, and to sell to Buyer in reliance on Buyer's specified financing. Buyer shall pursue the financing specified in this Agreement, even if Buyer also elects to pursue an alternative form of financing. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in this Agreement but shall not interfere with closing at the purchase price on the COE date (**paragraph 3B**) even if based upon alternate financing. Buyer's inability to obtain alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**7.**  **CLOSING AND POSSESSION:**

   **A.**  **OCCUPANCY:** Buyer intends to occupy the Property as indicated in **paragraph 3E(3)**. Occupancy may impact available financing.

   **B.**  **CONDITION OF PROPERTY ON CLOSING:**

     (1)  Unless Otherwise Agreed: **(i)** the Property shall be delivered **"As-Is"** in its PRESENT physical condition as of the date of Acceptance; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow or at the time possession is delivered to Buyer, if not on the same date. If items are not removed when possession is delivered to Buyer, all items shall be deemed abandoned. Buyer, after first Delivering to Seller written notice to remove the items within **3 Days**, may pay to have such items removed or disposed of and may bring legal action, as per this Agreement, to receive reasonable costs from Seller.

     (2)  **Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller and Agents may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had all required permits issued and/or finaled.**

   **C.**  **SELLER REMAINING IN POSSESSION AFTER CLOSE OF ESCROW:** If Seller has the right to remain in possession after Close Of Escrow pursuant to **paragraph 3M(2)** or as Otherwise Agreed, **(i)** the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; **(ii)** Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan; and **(iii)** consult with a qualified California real estate attorney where the Property is located to determine the ongoing rights and responsibilities of both Buyer and Seller with regard to each other, including possible tenant rights, and what type of written agreement to use to document the relationship between the Parties.

   **D.**  **At Close Of Escrow: (i)** Seller assigns to Buyer any assignable warranty rights for items included in the sale; and **(ii)** Seller shall Deliver to Buyer available Copies of any such warranties. Agents cannot and will not determine the assignability of any warranties.

   **E.**  Seller shall, on Close Of Escrow unless Otherwise Agreed and even if Seller remains in possession, provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems, intranet and Internet-connected devices included in the purchase price, garage door openers, and all items included in either **paragraph 3P** or **paragraph 9**. If the Property is a condominium or located in a common interest development, Seller shall be responsible for securing or providing any such items for Association amenities, facilities, and access. Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**8.**  **CONTINGENCIES AND REMOVAL OF CONTINGENCIES:**

   **A.**  **LOAN(S):**

     (1)  This Agreement is, **unless otherwise specified in paragraph 3L(1) or an attached CR form**, contingent upon Buyer obtaining the loan(s) specified. If contingent, Buyer shall act diligently and in good faith to obtain the designated loan(s). **If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan and Buyer is able to satisfy lender's non-appraisal conditions for closing the loan.**

     (2)  Buyer is advised to investigate the insurability of the Property as early as possible, as this may be a requirement for lending. Buyer's ability to obtain insurance for the Property, including fire insurance, is part of Buyer's Investigation of Property contingency. Failure of Buyer to obtain insurance may justify cancellation based on the Investigation contingency but not the loan contingency.

     (3)  Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement, unless Otherwise Agreed.

     (4)  If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

     (5)  NO LOAN CONTINGENCY: If "No loan contingency" is checked in **paragraph 3L(1)**, obtaining any loan specified is NOT a contingency of this Agreement. If Buyer does not obtain the loan specified, and as a result is unable to purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

   **B.**  **APPRAISAL:**

     (1)  This Agreement is, **unless otherwise specified in paragraph 3L(2) or an attached CR form**, contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the amount specified in **paragraph 3L(2)**, without requiring repairs or improvements to the Property. Appraisals are often a reliable source to verify square footage of the subject Property. However, the ability to cancel based on the measurements provided in an appraisal falls within the Investigation of Property contingency. The appraisal contingency is solely limited to the value determined by the appraisal. For any cancellation based upon this appraisal contingency, Buyer shall Deliver a Copy of the written appraisal to Seller, upon request by Seller.

     (2)  **NO APPRAISAL CONTINGENCY:** If "No appraisal contingency" is checked in **paragraph 3L(2)**, then Buyer may not use the loan contingency specified in **paragraph 3L(1)** to cancel this Agreement if the sole reason for not obtaining the loan is that the appraisal relied upon by Buyer's lender values the property at an amount less than that specified in **paragraph 3L(2)**. If Buyer is unable to obtain the loan specified solely for this reason, Seller may be entitled to Buyer's deposit or other legal remedies.

   **C.**  **INVESTIGATION OF PROPERTY:** This Agreement is, as specified in **paragraph 3L(3)**, contingent upon Buyer's acceptance of the condition of, and any other matter affecting, the Property.  See **paragraph 12.**

   **D.**  **REVIEW OF SELLER DOCUMENTS:** This Agreement is, as specified in **paragraph 3L(4)**, contingent upon Buyer's review of Seller's documents required in **paragraph 14A.**

RPA 12/21 (PAGE 5 OF 16)                         Buyer's Initials ___ / _____          Seller's Initials *FHBT* / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 5 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201  www.lwolf.com          **6217 Cahalan**

**EXHIBIT A**

**E.   TITLE:**

(1)   This Agreement is, as specified in **paragraph 3L(5)**, contingent upon Buyer's ability to obtain the title policy provided for in **paragraph 13G** and on Buyer's review of a current Preliminary Report and items that are disclosed or observable even if not on record or not specified in the Preliminary Report, and satisfying Buyer regarding the current status of title. Buyer is advised to review all underlying documents and other matters affecting title, including, but not limited to, any documents or deeds referenced in the Preliminary Report and any plotted easements.

(2)   Buyer has **5 Days** after receipt to review a revised Preliminary Report, if any, furnished by the Title Company and cancel the transaction if the revised Preliminary Report reveals material or substantial deviations from a previously provided Preliminary Report.

**F.   CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES (IF APPLICABLE):** This Agreement is, as specified in **paragraph 3L(6)**, contingent upon Buyer's review of Common Interest Disclosures required by Civil Code § 4525 and under **paragraph 11K** ("CI Disclosures").

**G.   BUYER REVIEW OF LEASED OR LIENED ITEMS CONTINGENCY:** Buyer's review of and ability and willingness to assume any lease, maintenance agreement or other ongoing financial obligation, or to accept the Property subject to any lien, disclosed pursuant to **paragraph 9B(6)**, is, as specified in **paragraph 3L(7)**, a contingency of this Agreement. Any assumption of the lease shall not require any financial obligation or contribution by Seller. Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement if Buyer, by the time specified in **paragraph 3L(7)**, refuses to enter into any necessary written agreements to accept responsibility for all obligations of Seller-disclosed leased or liened items.

**H.   REMOVAL OR WAIVER OF CONTINGENCIES WITH OFFER: Buyer shall have no obligation to remove a contractual contingency unless Seller has provided all required documents, reports, disclosures, and information pertaining to that contingency.** If Buyer does remove a contingency without first receiving all required information from Seller, Buyer is relinquishing any contractual rights that apply to that contingency. **If Buyer removes or waives any contingencies without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Agent.**

**I.   REMOVAL OF CONTINGENCY OR CANCELLATION:**

(1)   **For any contingency specified in paragraph 3L or 8, Buyer shall, within the applicable period specified, remove the contingency or cancel this Agreement.**

(2)   For the contingencies for review of Seller Documents, Preliminary Report, and Condominium/Planned Development Disclosures, Buyer shall, within the time specified in **paragraph 3L** or **5 Days** after receipt of Seller Documents or CI Disclosures, whichever occurs later, remove the applicable contingency in writing or cancel this Agreement.

(3)   If Buyer does not remove a contingency within the time specified, Seller, after first giving Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), shall have the right to cancel this Agreement.

**J.   SALE OF BUYER'S PROPERTY:** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer unless the Sale of Buyer's Property (C.A.R. Form COP) is checked as a contingency of this Agreement in **paragraph 3L(8)**.

**9.   ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**

**A.   NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the Multiple Listing Service (MLS), flyers, marketing materials, or disclosures are NOT included in the purchase price or excluded from the sale unless specified in this paragraph or **paragraph 3P** or as Otherwise Agreed. Any items included herein are components of the home and are not intended to affect the price. All items are transferred without Seller warranty.

**B.   ITEMS INCLUDED IN SALE:**

(1)   All EXISTING fixtures and fittings that are attached to the Property;

(2)   EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances and appliances for which special openings or encasements have been made (whether or not checked in **paragraph 3P**), window and door screens, awnings, shutters, window coverings (which includes blinds, curtains, drapery, shutters or any other materials that cover any portion of the window), attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment (including, but not limited to, any cleaning equipment such as motorized/automatic pool cleaners, pool nets, pool covers), garage door openers/remote controls, mailbox, in-ground landscaping, water features and fountains, water softeners, water purifiers, light bulbs (including smart bulbs) and all items specified as included in **paragraph 3P, if currently existing at the time of Acceptance.**
**Note:** If Seller does not intend to include any item specified as being included above because it is not owned by Seller, whether placed on the Property by Agent, stager or other third party, the item should be listed as being excluded in **paragraph 3P** or excluded by Seller in a counter offer.

(3)   Security System includes any devices, hardware, software, or control units used to monitor and secure the Property, including but not limited to, any motion detectors, door or window alarms, and any other equipment utilized for such purpose. If checked in **paragraph 3P**, all such items are included in the sale, whether hard wired or not.

(4)   Home Automation (Smart Home Features) includes any electronic devices and features including, but not limited to, thermostat controls, kitchen appliances not otherwise excluded, and lighting systems, that are connected (hard wired or wirelessly) to a control unit, computer, tablet, phone, or other "smart" device. Any Smart Home devices and features that are physically affixed to the real property, and also existing light bulbs, are included in the sale. Buyer is advised to use **paragraph 3P(1)** or an addendum to address more directly specific items to be included. Seller is advised to use a counter offer to address more directly any items to be excluded.

(5)   Non-Dedicated Devices: If checked in **paragraph 3P**, all smart home and security system control devices are included in the sale, except for any non-dedicated personal computer, tablet, or phone used to control such features. Buyer acknowledges that a separate device and access to wifi or Internet may be required to operate some smart home features and Buyer may have to obtain such device after Close Of Escrow. Buyer is advised to change all passwords and ensure the security of any smart home features.

(6)   **LEASED OR LIENED ITEMS AND SYSTEMS:** Seller, within the time specified in **paragraph 3N(1)**, shall **(i)** disclose to Buyer if any item or system specified in **paragraph 3P** or **9B** or otherwise included in the sale is leased, or not owned by Seller, or is subject to any maintenance or other ongoing financial obligation, or specifically subject to a lien or other encumbrance or loan, and **(ii)** Deliver to Buyer all written materials (such as lease, warranty, financing, etc.) concerning any such item.

(7)   Seller represents that all items included in the purchase price, unless Otherwise Agreed, **(i)** are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to **paragraph 9B(6)**, and **(ii)** are transferred without Seller warranty regardless of value. Seller shall cooperate with the identification of any software or applications and Buyer's efforts to transfer any services needed to operate any Smart Home Features or other items included in this Agreement, including, but not limited to, utilities or security systems.

---

**RPA 12/21 (PAGE 6 OF 16)**                    Buyer's Initials ___ / ___          Seller's Initials ___ / ___          

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 6 OF 16)**

**EXHIBIT A**

Property Address: **6217 Cahalan Ave, San Jose, CA  95123-4505**                                    Date: **April 19, 2022**

**C. ITEMS EXCLUDED FROM SALE:** Unless Otherwise Agreed, the following items are excluded from sale: **(i)** All items specified in **paragraph 3P(2); (ii)** audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; **(iii)** furniture and other items secured to the Property for earthquake or safety purposes. **Unless otherwise specified in paragraph 3P(1), brackets attached to walls, floors or ceilings for any such component, furniture or item will be removed and holes or other damage shall be repaired, but not painted.**

**10. ALLOCATION OF COSTS:**

**A. INSPECTIONS, REPORTS AND CERTIFICATES:** Paragraphs **3Q(1), (2), (3), and (5)** only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; **it does not determine who is to pay for any work recommended or identified in the Report. Agreements for payment of required work should be specified elsewhere in paragraph 3Q, or 3R, or in a separate agreement (such as C.A.R. Forms RR, RRRR, ADM or AEA).**

**B. GOVERNMENT REQUIREMENTS AND CORRECTIVE OR REMEDIAL ACTIONS:**

(1) **LEGALLY REQUIRED INSTALLATIONS AND PROPERTY IMPROVEMENTS:** Any required installation of smoke alarm or carbon monoxide device(s) or securing of water heater shall be completed within the time specified in **paragraph 3N(4)** and paid by the Party specified in **paragraph 3Q(4)**. If Buyer is to pay for these items, Buyer, as instructed by Escrow Holder, shall deposit funds into escrow or directly to the vendor completing the repair or installation. Prior to Close Of Escrow, Seller shall Deliver to Buyer written statement(s) of compliance in accordance with any Law, unless Seller is exempt. If Seller is to pay for these items and does not fulfill Seller's obligation in the time specified, and Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for Buyer's costs.

(2) **POINT OF SALE REQUIREMENTS:**

(A) Point of sale inspections, reports and repairs refer to any such actions required to be completed before or after Close Of Escrow that are required in order to close under any Law and paid by Party specified in **paragraphs 3Q(5) and 3Q(6)**. Unless Parties Otherwise Agree to another time period, any such repair, shall be completed prior to final verification of Property. If Buyer agrees to pay for any portion of such repair, Buyer, shall **(i)** directly pay to the vendor completing the repair or **(ii)** provide an invoice to Escrow Holder, deposit funds into escrow sufficient to pay for Buyer's portion of such repair and request Escrow Holder pay the vendor completing the repair.

(B) Buyer shall be provided, within the time specified in **paragraph 3N(1)**, unless Parties Otherwise Agree to another time period, a Copy of any required government-conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

(3) **REINSPECTION FEES:** If any repair in **paragraph 10B(1)** is not completed within the time specified and the lender requires an additional inspection to be made, Seller shall be responsible for any corresponding reinspection fee. If Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for those costs.

(4) **INFORMATION AND ADVICE ON REQUIREMENTS:** Buyer and Seller are advised to seek information from a knowledgeable source regarding local and State mandates and whether they are point of sale requirements or requirements of ownership. Agents do not have expertise in this area and cannot ascertain all of the requirements or costs of compliance.

**C. HOME WARRANTY:**

(1) Buyer shall choose the coverages, regardless of any optional coverages indicated, of the home warranty plan and Buyer shall pay any cost of that plan, chosen by Buyer, that exceeds the amount allocated to Seller in **paragraph 3Q(18)**. Buyer is informed that home warranty plans have many optional coverages, including but not limited to, coverages for Air Conditioner and Pool/Spa. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.

(2) **If Buyer waives the purchase of a home warranty plan in paragraph 3Q(18), Buyer may still purchase a home warranty plan, at Buyer's expense, prior to Close Of Escrow.**

**11. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

**A. TDS, NHD, AND OTHER STATUTORY AND SUPPLEMENTAL DISCLOSURES:**

(1) Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: unless exempt, fully completed disclosures or notices required by §§ 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement (C.A.R. Form TDS), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD), and, if the Property is in a high or very high fire hazard severity area, the information, notices, documentation, and agreements required by §§ 1102.6(f) and 1102.19 of the Civil Code (C.A.R. Form FHDS).

(2) The Real Estate Transfer Disclosure Statement required by this paragraph is considered fully completed if Seller has completed the section titled Coordination with Other Disclosure Forms by checking a box (Section I), and Seller has completed and answered all questions and Signed the Seller's Information section (Section II) and the Seller's Agent, if any, has completed and Signed the Seller's Agent's section (Section III), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Section V acknowledgment of receipt of a Copy of the TDS shall be Signed after all previous sections, if applicable, have been completed. Nothing stated herein relieves a Buyer's Agent, if any, from the obligation to **(i)** conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or **(ii)** complete any sections on all disclosures required to be completed by Buyer's Agent.

(3) Seller shall, within the time specified in **paragraph 3N(1)**, provide "Supplemental Disclosures" as follows: **(i)** unless exempt from the obligation to provide a TDS, complete a Seller Property Questionnaire (C.A.R. Form SPQ) by answering all questions and Signing and Delivering a Copy to Buyer; **(ii)** if exempt from the obligation to provide a TDS, complete an Exempt Seller Disclosure (C.A.R. Form ESD) by answering all questions and Signing and Delivering a Copy to Buyer.

(4) In the event Seller or Seller's Agent, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer under this paragraph, Seller shall, in writing, promptly provide a subsequent or amended TDS, Seller Property Questionnaire or other document, in writing, covering those items. Any such document shall be deemed an amendment to the TDS or SPQ. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are discovered by Buyer or disclosed in reports or documents provided to or ordered and paid for by Buyer.**

**RPA 12/21 (PAGE 7 OF 16)**          Buyer's Initials _____ / _____          Seller's Initials _FHBT_ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 7 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201  www.lwolf.com          6217 Cahalan Ave

**EXHIBIT A**

Property Address: **6217 Cahalan Ave, San Jose, CA  95123-4505**                    Date: **April 19, 2022**

**B. LEAD DISCLOSURES:**

(1) Seller shall, within the time specified in **paragraph 3N(1)**, for any residential property built before January 1, 1978, unless exempted by Law, Deliver to Buyer a fully completed Federal Lead-Based Paint Disclosures (C.A.R. Form LPD) and pamphlet ("Lead Disclosures").

(2) Buyer shall, within the time specified in **paragraph 3L(3)**, have the opportunity to conduct a risk assessment or to inspect for the presence of lead-based paint hazards.

**C. HOME FIRE HARDENING DISCLOSURE AND ADVISORY:** For any transaction where a TDS is required, the property is located in a high or very high fire hazard severity zone, and the home was constructed before January 1, 2010 , Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer: **(i)** a home hardening disclosure required by law; and **(ii)** a statement of features of which the Seller is aware that may make the home vulnerable to wildfire and flying embers; and **(iii)** a final inspection report regarding compliance with defensible space requirements if one was prepared pursuant to Government Code § 51182 (C.A.R. Form FHDS).

**D. DEFENSIBLE SPACE DISCLOSURE AND ADDENDUM:** For any transaction in which a TDS is required and the property is located in a high or very high fire hazard severity zone, Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer **(i)** a disclosure of whether the Property is in compliance with any applicable defensible space laws designed to protect a structure on the Property from fire; and **(ii)** an addendum allocating responsibility for compliance with any such defensible space law (C.A.R. Form FHDS).

**E. WAIVER PROHIBITED:** Waiver of Statutory, Lead, and other Disclosures in **paragraphs 11A(1)**, **11B**, **11C**, and **11D** are prohibited by Law.

**F. RETURN OF SIGNED COPIES:** Buyer shall, within the time specified in **paragraph 3L(3)** OR **5 Days** after Delivery of any disclosures specified in paragraphs **11 A**, **B**, **C** or **D**, and defensible space addendum in **paragraph 11D**, whichever is later, return Signed Copies of the disclosures, and if applicable, addendum, to Seller.

**G. TERMINATION RIGHTS:**

(1) **Statutory and Other Disclosures:** If any disclosure specified in paragraphs **11A**, **B**, **C**, or **D**, or subsequent or amended disclosure to those just specified, is Delivered to Buyer after the offer is Signed, Buyer shall have the right to terminate this Agreement within **3 Days** after Delivery in person, or **5 Days** after Delivery by deposit in the mail, or by an electronic record or email satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of rescission to Seller or Seller's Authorized Agent. If Buyer does not rescind within this time period, Buyer has been deemed to have approved the disclosure and shall not have the right to cancel.

(2) **Defensible Space Compliance:** If, by the time specified in **paragraph 11F**, Buyer does not agree to the terms regarding defensible space compliance Delivered by Seller, as indicated by mutual signatures on the FHDS, then Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement.

**H. WITHHOLDING TAXES:** Buyer and Seller hereby instruct Escrow Holder to withhold the applicable required amounts to comply with federal and California withholding Laws and forward such amounts to the Internal Revenue Service and Franchise Tax Board, respectively. However, no federal withholding is required if, prior to Close Of Escrow, Seller Delivers **(i)** to Buyer and Escrow Holder a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law (FIRPTA); **OR (ii)** to a qualified substitute (usually a title company or an independent escrow company) a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law AND the qualified substitute Delivers to Buyer and Escrow Holder an affidavit signed under penalty of perjury (C.A.R. Form QS) that the qualified substitute has received the fully completed Seller's affidavit and the Seller states that no federal withholding is required; **OR (iii)** to Buyer other documentation satisfying the requirements under Internal Revenue Code § 1445 (FIRPTA). No withholding is required under California Law if, prior to Close Of Escrow, Escrow Holder has received sufficient documentation from Seller that no withholding is required, and Buyer has been informed by Escrow Holder.

**I. MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to § 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov**. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**J. NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/**. To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Website. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)

**K. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**

**(1)** Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer whether the Property is a condominium or is located in a planned development, other common interest development, or otherwise subject to covenants, conditions, and restrictions (C.A.R. Form SPQ or ESD).

**(2)** If the Property is a condominium or is located in a planned development or other common interest development with a HOA, Seller shall, within the time specified in **paragraph 3N(3)**, order from, and pay any required fee as specified in **paragraph 3Q(12)** for the following items to the HOA (C.A.R. Form HOA-IR): **(i)** Copies of any documents required by Law (C.A.R. Form HOA-RS); **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; **(v)** the names and contact information of all HOAs governing the Property; **(vi)** pet restrictions; and **(vii)** smoking restrictions ("CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Seller shall, as directed by Escrow Holder, deposit funds into escrow or direct to HOA or management company to pay for any of these items.

**L. NATURAL AND ENVIRONMENTAL HAZARDS:** Seller shall, within the time specified in **paragraph 3N(1)**, if required by Law: **(i)** Deliver to Buyer the earthquake guide and environmental hazards booklet, and for all residential property with 1-4 units and any manufactured or mobile home built before January 1, 1960, fully complete and Deliver the Residential Earthquake Risk Disclosure Statement; and **(ii)** even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

RPA 12/21 (PAGE 8 OF 16)          Buyer's Initials [_____] [_____]          Seller's Initials _FHBT_ [_____]

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 8 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          6217 Cahalan Ave

**EXHIBIT A**

DocuSign Envelope ID: EF98AEC7-E12E-4DD0-8C9A-6FBA8A573C29

   **M.** **KNOWN MATERIAL FACTS:** Seller shall, within the time specified in **paragraph 3N(1)**, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including, but not limited to, known insurance claims within the past five years, or provide Buyer with permission to contact lender to get such information (C.A.R. Form ARC), and make any and all other disclosures required by Law.

**12.** **BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

   **A.** Buyer shall, within the time specified in **paragraph 3L(3)**, have the right, at Buyer's expense unless Otherwise Agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations").

   **B.** Buyer Investigations include, but are not limited to:

     (1) Inspections regarding any physical attributes of the Property or items connected to the Property, such as:

      (A) A general home inspection.

      (B) An inspection for lead-based paint and other lead-based paint hazards.

      (C) An inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2).

      (D) Any other specific inspections of the physical condition of the land and improvements.

     (2) All other Buyer Investigations, such as insurance, not specified above. See, Buyer's Investigation Advisory (C.A.R. Form BIA) for more.

     (3) A review of reports, disclosures or information prepared by or for Seller and Delivered to Buyer pursuant to **paragraphs 3**, **10**, **11**, and **14A**.

   **C.** Without Seller's prior written consent, Buyer shall neither make nor cause to be made: **(i)** invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report, which shall not include any holes or drilling though stucco or similar material; or **(ii)** inspections by any governmental building or zoning inspector or government employee, unless required by Law.

   **D.** Seller shall make the Property available for all Buyer Investigations. Seller is not obligated to move any existing personal property. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is delivered to Buyer. Buyer shall, **(i)** by the time specified in **paragraph 3L(3)**, complete Buyer Investigations and satisfy themselves as to the condition of the Property, and either remove the contingency or cancel this Agreement, and **(ii)** by the time specified in **paragraph 3L(3)** or **3 Days** after receipt of any Investigation report, whichever is later, give Seller at no cost, complete Copies of all such reports obtained by Buyer, which obligation shall survive the termination of this Agreement. This Delivery of Investigation reports shall not include any appraisal, except an appraisal received in connection with an FHA or VA loan.

   **E.** **Buyer indemnity and Seller protection for entry upon the Property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction.  Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13.** **TITLE AND VESTING:**

   **A.** Buyer shall, within the time specified in **paragraph 3N(1)**, be provided a current Preliminary Report by the person responsible for paying for the title report in **paragraph 3Q(8)**. If Buyer is responsible for paying, Buyer shall act diligently and in good faith to obtain such Preliminary Report within the time specified. The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities.

   **B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing. For any lien or matter not being transferred upon sale, Seller will take necessary action to deliver title free and clear of such lien or matter.

   **C.** Seller shall within **7 Days** after request, give Escrow Holder necessary information to clear title.

   **D.** Seller shall, within the time specified in **paragraph 3N(1)**, disclose to Buyer all matters known to Seller affecting title, whether of record or not.

   **E.** If Buyer is a legal entity and the Property purchase price is at least $300,000 and the purchase price is made without a bank loan or similar form of external financing, a Geographic Targeting Order (GTO) issued by the Financial Crimes Enforcement Network, U.S. Department of the Treasury, requires title companies to collect and report certain information about the Buyer, depending on where the Property is located. Buyer agrees to cooperate with the title company's effort to comply with the GTO.

   **F.** Buyer shall, after Close Of Escrow, receive a recorded grant deed or any other conveyance document required to convey title (or, for stock conveyance or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's vesting instructions. The recording document shall contain Buyer's post-closing mailing address to enable Buyer's receipt of the recorded conveyance document from the County Recorder. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 9 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          **6217 Cahalan Ave**

**EXHIBIT A**

Case: 20-50454    Doc# 368    Filed: 10/03/22    Entered: 10/03/22 13:27:29    Page 15 of 32

Property Address: **6217 Cahalan Ave, San Jose, CA  95123-4505**                                      Date: *April 19, 2022*

G.  Buyer shall receive a "ALTA/CLTA Homeowner's Policy of Title Insurance" or equivalent policy of title insurance, if applicable to the type of property and buyer. Escrow Holder shall request this policy. If a ALTA/CLTA Homeowner's Policy of Title Insurance is not offered, Buyer shall receive a CLTA Standard Coverage policy unless Buyer has chosen another policy and instructed Escrow Holder in writing of the policy chosen and agreed to pay any increase in cost. Buyer should consult with the Title Company about the availability, and difference in coverage, and cost, if any, between a ALTA/CLTA Homeowner's Policy and a CLTA Standard Coverage policy and other title policies and endorsements. Buyer should receive notice from the Title Company on its Preliminary (Title) Report of the type of coverage offered. If Buyer is not notified on the Preliminary (Title) Report or is not satisfied with the policy offered, and Buyer nonetheless removes the contingency for Review of the Preliminary Report, Buyer will receive the policy as specified in this paragraph.

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).**

A.  **SELLER DELIVERY OF DOCUMENTS:** Seller shall, within the time specified in **paragraph 3N(1)**, Deliver to Buyer all reports, disclosures and information ("Reports") for which Seller is responsible as specified in **paragraphs 9B(6)**, **10**, **11A**, **11B**, **11C**, **11D**, **11H**, **11K**, **11L**, **11M**, **13A**, **and 13D**.

B.  **BUYER REVIEW OF DOCUMENTS; REPAIR REQUEST; CONTINGENCY REMOVAL OR CANCELLATION**

(1)  Buyer has the time specified in **paragraph 3** to: **(i)** perform Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to **paragraph 9B(6)**, and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Other Disclosures Delivered by Seller in accordance with **paragraph 11**.

(2)  Buyer may, within the time specified in **paragraph 3L(3)**, request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests (C.A.R. Form RR or RRRR). If Seller does not agree or does not respond, Buyer is not contractually entitled to have the repairs or other requests made and may only cancel based on contingencies in this Agreement.

(3)  Buyer shall, by the end of the times specified in **paragraph 3L** (or as Otherwise Agreed), Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement (C.A.R. Form CR or CC). However, if any report, disclosure, or information for which Seller is responsible, other than those in **paragraph 11A** or **11B**, is not Delivered within the time specified in **paragraph 3N(1)**, then Buyer has **5 Days** after Delivery of any such items, or the times specified in **paragraph 3L**, whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement. If Delivery of any Report occurs after a contractual contingency pertaining to that Report has already been waived or removed, the Delivery of the Report does not revive the contingency but there may be a right to terminate for a subsequent or amended disclosure under **paragraph 11G**.

(4)  **Continuation of Contingency:** Even after the end of the time specified in **paragraph 3L** and before Seller cancels, if at all, pursuant to **paragraph 14C**, Buyer retains the right, in writing, to either **(i)** remove remaining contingencies, or **(ii)** cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to **paragraph 14C(1)**.

C.  **SELLER RIGHT TO CANCEL:**

(1)  **SELLER RIGHT TO CANCEL; BUYER CONTINGENCIES:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

(2)  **SELLER RIGHT TO CANCEL; BUYER CONTRACT OBLIGATIONS:** Seller, after first Delivering to Buyer a Notice to Buyer to Perform, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by **paragraph 3D(1)** or **3D(2)** or if the funds deposited pursuant to **paragraph 3D(1)** or **3D(2)** are not good when deposited; **(ii)** Deliver updated contact information for Buyer's lender(s) as required by **paragraph 5C(3)**; **(iii)** Deliver a notice of FHA or VA costs or terms, if any, as specified by **paragraph 5C(4)** (C.A.R. Form RR); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by **paragraph 5B** or **6A**; **(v)** Deliver a letter as required by **paragraph 6B**; **(vi)** In writing assume or accept leases or liens specified in **paragraph 8G**; **(vii)** Return Statutory and Other Disclosures as required by **paragraph 11F**; **(viii)** Cooperate with the title company's effort to comply with the GTO as required by **paragraph 13E**; **(ix)** Sign or initial a separate liquidated damages form for an increased deposit as required by **paragraphs 5A(2)** and **29**; **(x)** Provide evidence of authority to Sign in a representative capacity as specified in **paragraph 28**; or **(xi)** Perform any additional Buyer contractual obligation(s) included in this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Seller's cancellation.

(3)  **SELLER RIGHT TO CANCEL; SELLER CONTINGENCIES:** Seller may cancel this Agreement by good faith exercise of any Seller contingency included in this Agreement, or Otherwise Agreed, so long as that contingency has not already been removed or waived in writing.

D.  **BUYER RIGHT TO CANCEL:**

(1)  **BUYER RIGHT TO CANCEL; SELLER CONTINGENCIES:** If, by the time specified in this Agreement, Seller does not Deliver to Buyer a removal of the applicable contingency or cancellation of this Agreement, then Buyer, after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer and other expenses already paid by Escrow Holder pursuant to this Agreement prior to Buyer's cancellation.

(2)  **BUYER RIGHT TO CANCEL; SELLER CONTRACT OBLIGATIONS:** If, by the time specified, Seller has not Delivered any item specified in **paragraph 3N(1)** or Seller has not performed any Seller contractual obligation included in this Agreement by the time specified, Buyer, after first Delivering to Seller a Notice to Seller to Perform, may cancel this Agreement.

(3)  **BUYER RIGHT TO CANCEL; BUYER CONTINGENCIES:** Buyer may cancel this Agreement by good faith exercise of any Buyer contingency included in **paragraph 8**, or Otherwise Agreed, so long as that contingency has not already been removed in writing.

**RPA 12/21 (PAGE 10 OF 16)**                    Buyer's Initials  *G*  /  _____            Seller's Initials  *FHBT*  / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 10 OF 16)**

**EXHIBIT A**

DocuSign Envelope ID: EF98AEC7-E12E-4DD0-8C9A-6FBA8A573C29

**E.** **NOTICE TO BUYER OR SELLER TO PERFORM:** The Notice to Buyer to Perform or Notice to Seller to Perform shall: **(i)** be in writing; **(ii)** be Signed by the applicable Buyer or Seller; and **(iii)** give the other Party at least **2 Days** after Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform or Notice to Seller to Perform may not be Delivered any earlier than **2 Days** prior to the Scheduled Performance Day to remove a contingency or cancel this Agreement or meet an obligation specified in **paragraph 14**, whether or not the Scheduled Performance Day falls on a Saturday, Sunday or legal holiday. If a Notice to Buyer to Perform or Notice to Seller to Perform is incorrectly Delivered or specifies a time less than the agreed time, the notice shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new Notice to Buyer to Perform or Notice to Seller to Perform with the specified timeframe.

**F.** **EFFECT OF REMOVAL OF CONTINGENCIES:**
(1) **REMOVAL OF BUYER CONTINGENCIES:** If Buyer removes any contingency or cancellation rights, unless Otherwise Agreed, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for the non-delivery of any reports, disclosures or information outside of Seller's control and for any Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

(2) **REMOVAL OF SELLER CONTINGENCIES:** If Seller removes any contingency or cancellation rights, unless Otherwise Agreed, Seller shall conclusively be deemed to have: **(i)** satisfied themselves regarding such contingency, **(ii)** elected to proceed with the transaction; and **(iii)** given up any right to cancel this Agreement based on such contingency.

**G.** **DEMAND TO CLOSE ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a Demand to Close Escrow (C.A.R. Form DCE). The DCE shall: **(i)** be Signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 Days** after Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** prior to the Scheduled Performance Day for the Close Of Escrow. If a DCE is incorrectly Delivered or specifies a time less than the above timeframe, the DCE shall be deemed invalid and void, and Seller or Buyer shall be required to Deliver a new DCE.

**H.** **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign and Deliver mutual instructions to cancel the sale and escrow and release deposits, if any, to the Party entitled to the funds, less **(i)** fees and costs paid by Escrow Holder on behalf of that Party, if required by this Agreement; and **(ii)** any escrow cancellation fee charged to that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. A release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. **A Party may be subject to a civil penalty of up to $1,000 for refusal to Sign cancellation instructions if no good faith dispute exists as to which Party is entitled to the deposited funds** (Civil Code § 1057.3). Note: Neither Agents nor Escrow Holder are qualified to provide any opinion on whether either Party has acted in good faith or which Party is entitled to the deposited funds. **Buyer and Seller are advised to seek the advice of a qualified California real estate attorney regarding this matter.**

**15.** **REPAIRS:** Repairs shall be completed prior to final verification of condition unless Otherwise Agreed. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. Buyer acknowledges that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**16.** **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property condition within the time specified in **paragraph 3J**, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to **paragraph 7B**; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**17.** **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless Otherwise Agreed, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, Seller rental payments, HOA regular assessments due prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. Seller shall pay any HOA special or emergency assessments due prior to Close Of Escrow. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special or emergency assessments that are due after Close Of Escrow. Property will be reassessed upon change of ownership. Any supplemental tax bills delivered to Escrow Holder prior to closing shall be prorated and paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). Seller agrees all service fees, maintenance costs and utility bills will be paid current up and through the date of Close Of Escrow. TAX BILLS AND UTILITY BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**18.** **BROKERS AND AGENTS:**
**A.** **COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.

**B.** **SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Agent: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Agent; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**RPA 12/21 (PAGE 11 OF 16)**          Buyer's Initials _____ / _____      Seller's Initials *FHBT* / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 11 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com      6217 Cahalan Ave

**EXHIBIT A**

**19.  JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

**A.  The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: **paragraphs 1, 3A, 3B, 3D-G, 3N(2), 3Q, 3R, 4A, 4B, 5A(1-2) 5D, 5E, 10B(2)(A), 10B(3), 10C, 11H, 11K(2), 13 (except 13D), 14H, 17, 18A, 19, 23, 25, 27, 28, 32, 33, and paragraph 3 of the Real Estate Brokers Section.** If a Copy of the separate compensation agreement(s) provided for in **paragraph 18A** or **paragraph C of the Real Estate Brokers Section** is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned.

**B.**  Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller shall Sign and return Escrow Holder's general provisions or supplemental instructions within the time specified in **paragraph 3N(2)**. Buyer and Seller shall execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 Days**, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by **paragraphs 3**, **8**, **10**, **11**, or elsewhere in this Agreement.

**C.**  A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** after **Acceptance**. Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title Company when received from Seller, if a separate company is providing title insurance. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under **paragraph 11H**, Escrow Holder shall deliver to Buyer, Buyer's Agent, and Seller's Agent a Qualified Substitute statement that complies with federal Law. If Escrow Holder's Qualified Substitute statement does not comply with federal law, the Parties instruct escrow to withhold all applicable required amounts under **paragraph 11H**.

**D.**  Agents are not a party to the escrow, except for Brokers for the sole purpose of compensation pursuant to **paragraph 18A and paragraph 3 of the Real Estate Brokers Section**. If a Copy of the separate compensation agreement(s) provided for in either of those paragraphs is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s).Buyer and Seller irrevocably assign to Brokers compensation specified in **paragraph 18A**, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

**E.**  Buyer and Seller acknowledge that Escrow Holder may require invoices for expenses under this Agreement. Buyer and Seller, upon request by Escrow Holder, within **3 Days** or within a sufficient time to close escrow, whichever is sooner, shall provide any such invoices to Escrow Holder.

**F.**  Upon receipt, Escrow Holder shall provide Buyer, Seller, and each Agent verification of Buyer's deposit of funds pursuant to **paragraphs 5A(1) and 5A(2)**. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify each Agent: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

**G.**  A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3 Days** after mutual execution of the amendment.

**20.  SELECTION OF SERVICE PROVIDERS:** Agents do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Agent or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**21.  MULTIPLE LISTING SERVICE ("MLS"):** Agents are authorized to report to the MLS that an offer has been accepted, and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS. Buyer acknowledges that: **(i)** any pictures, videos, floor plans (collectively, "Images") or other information about the Property that has been or will be inputted into the MLS or internet portals, or both, at the instruction of Seller or in compliance with MLS rules, will not be removed after Close Of Escrow; **(ii)** California Civil Code § 1088(c) requires the MLS to maintain such Images and information for at least three years and as a result they may be displayed or circulated on the Internet, which cannot be controlled or removed by Seller or Agents; and **(iii)** Seller, Seller's Agent, Buyer's Agent, and MLS have no obligation or ability to remove such Images or information from the Internet.

**22.  ATTORNEY FEES AND COSTS:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in **paragraph 30A.**

**23.  ASSIGNMENT:** Buyer shall have the right to assign all of Buyer's interest in this Agreement to Buyer's own trust or to any wholly owned entity of Buyer that is in existence at the time of such assignment. Otherwise, Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Prior to any assignment, Buyer shall disclose to Seller the name of the assignee and the amount of any monetary consideration between Buyer and assignee. Buyer shall provide assignee with all documents related to this Agreement including, but not limited to, the Agreement and any disclosures. If assignee is a wholly owned entity or trust of Buyer, that assignee does not need to re-sign or initial all documents provided. Whether or not an assignment requires seller's consent, at the time of assignment, assignee shall deliver a letter from assignee's lender that assignee is prequalified or preapproved as specified in **paragraph 6B**. Should assignee fail to deliver such a letter, Seller, after first giving Assignee an Notice to Buyer to Perform, shall have the right to terminate the assignment. Buyer shall, within the time specified in **paragraph 3K**, Deliver any request to assign this Agreement for Seller's consent. If Buyer fails to provide the required information within this time frame, Seller's withholding of consent shall be deemed reasonable. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless Otherwise Agreed by Seller (C.A.R. Form AOAA).

**24.  EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

**25.  DEFINITIONS AND INSTRUCTIONS:** The following words are defined terms in this Agreement, shall be indicated by initial capital letters throughout this Agreement, and have the following meaning whenever used:

**A.  "Acceptance"** means the time the offer or final counter offer is fully executed, in writing by the recipient Party and is Delivered to the offering Party or that Party's Authorized Agent.

**RPA 12/21 (PAGE 12 OF 16)**          Buyer's Initials _____ / _____          Seller's Initials _____ / _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 12 OF 16)**

**EXHIBIT A**

B. **"Agent"** means the Broker, salesperson, broker-associate or any other real estate licensee licensed under the brokerage firm identified in **paragraph 2B**.

C. **"Agreement"** means this document and any counter offers and any incorporated addenda or amendments, collectively forming the binding agreement between the Parties. Addenda and amendments are incorporated only when Signed and Delivered by all Parties.

D. **"As-Is"** condition: Seller shall disclose known material facts and defects as specified in this Agreement. Buyer has the right to inspect the Property and, within the time specified, request that Seller make repairs or take other corrective action, or exercise any contingency cancellation rights in this Agreement. Seller is only required to make repairs specified in this Agreement or as Otherwise Agreed.

E. **"Authorized Agent"** means an individual real estate licensee specified in the Real Estate Broker Section.

F. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the Parties.

G. **"Close Of Escrow"**, including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded for any real property, or the date of Delivery of a document evidencing the transfer of title for any non-real property transaction.

H. **"Copy"** means copy by any means including photocopy, facsimile and electronic.

I. **Counting Days** is done as follows unless Otherwise Agreed: (1) The first Day after an event is the first full calendar date following the event, and ending at 11:59 pm. For example, if a Notice to Buyer to Perform (C.A.R. form NBP) is Delivered at 3 pm on the 7th calendar day of the month, or Acceptance of a counter offer is personally received at 12 noon on the 7th calendar day of the month, then the 7th is Day "0" for purposes of counting days to respond to the NBP or calculating the Close Of Escrow date or contingency removal dates and the 8th of the month is Day 1 for those same purposes. (2) All calendar days are counted in establishing the first Day after an event. (3) All calendar days are counted in determining the date upon which performance must be completed, ending at 11:59 pm on the last day for performance ("Scheduled Performance Day"). (4) After Acceptance, if the Scheduled Performance Day for any act required by this Agreement, including Close Of Escrow, lands on a Saturday, Sunday, or legal holiday, the performing party shall be allowed to perform on the next day that is not a Saturday, Sunday or legal holiday ("Allowable Performance Day"), and ending at 11:59 pm. (5) For the purposes of COE, any day that the Recorder's office in the County where the Property is located is closed, the COE shall occur on the next day the Recorder's office in that County is open. (6) COE is considered Day 0 for purposes of counting days Seller is allowed to remain in possession, if permitted by this Agreement.

J. **"Day"** or **"Days"** means calendar day or days. However, delivery of deposit to escrow is based on business days.

K. **"Deliver", "Delivered" or "Delivery"** of documents, unless Otherwise Agreed, means and shall be effective upon personal receipt of the document by Buyer or Seller or their Authorized Agent. Personal receipt means **(i)** a Copy of the document, or as applicable, link to the document, is in the possession of the Party or Authorized Agent, regardless of the Delivery method used (i.e. e-mail, text, other), or **(ii)** an Electronic Copy of the document, or as applicable, link to the document, has been sent to any of the designated electronic delivery addresses specified in the Real Estate Broker Section on page 16. After Acceptance, Agent may change the designated electronic delivery address for that Agent by, in writing, Delivering notice of the change in designated electronic delivery address to the other Party. Links could be, for example, to DropBox or GoogleDrive or other functionally equivalent program. If the recipient of a link is unable or unwilling to open the link or download the documents or otherwise prefers Delivery of the documents directly, Recipient of a link shall notify the sender in writing, within **3 Days** after Delivery of the link (C.A.R. Form RFR). In such case, Delivery shall be effective upon Delivery of the documents and not the link. Failure to notify sender within the time specified above shall be deemed consent to receive, and Buyer opening, the document by link.

L. **"Electronic Copy" or "Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

M. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

N. **"Legally Authorized Signer"** means an individual who has authority to Sign for the principal as specified in **paragraph 32** or **paragraph 33.**

O. **"Otherwise Agreed"** means an agreement in writing, signed by both Parties and Delivered to each.

P. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

Q. **"Sign" or "Signed"** means either a handwritten or Electronic Signature on an original document, Copy or any counterpart.

26. **TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the terms and conditions herein. The individual Liquidated Damages and Arbitration of Disputes paragraphs are incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a Counter Offer or addendum. **If at least one but not all Parties initial, a Counter Offer is required until agreement is reached.** Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance and to market the Property for backup offers after Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationship. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing. By signing this offer or any document in the transaction, the Party Signing the document is deemed to have read the document in its entirety.

27. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as Otherwise Agreed, this Agreement shall be interpreted, and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

28. **LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer identified in **paragraph 32** or **33** appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer **(i)** represents that the entity for which that person is acting already exists and is in good standing to do business in California and **(ii)** shall Deliver to the other Party and Escrow Holder, within the time specified in paragraph **3N(5)**, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

RPA 12/21 (PAGE 13 OF 16)  Buyer's Initials ___/___  Seller's Initials *FHBT* / ___  

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 13 OF 16)**

**EXHIBIT A**

Case: 20-50454  Doc# 368  Filed: 10/03/22  Entered: 10/03/22 13:27:29  Page 19 of 32

Property Address: **6217 Cahalan Ave, San Jose, CA 95123-4505**  Date: **April 19, 2022**

**29. LIQUIDATED DAMAGES** (By initialing in the space below, you are agreeing to Liquidated Damages)**:**
**If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM DID).**

Buyer's Initials _____ / _____         Seller's Initials _____ / _____

**30. MEDIATION:**
  **A.** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. The mediation shall be conducted through the C.A.R. Real Estate Mediation Center for Consumers (**www.consumermediation.org**) or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Agents(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Agent.** Mediation fees, if any, shall be divided equally among the Parties involved, and shall be recoverable under the prevailing party attorney fees clause. If, for any dispute or claim to which this paragraph applies, any Party **(i)** commences an action without first attempting to resolve the matter through mediation, or **(ii)** before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.
  **B. ADDITIONAL MEDIATION TERMS: (i) Exclusions from this mediation agreement are specified in paragraph 31B; (ii) The obligation to mediate does not preclude the right of either Party to seek a preservation of rights under paragraph 31C; and (iii) Agent's rights and obligations are further specified in paragraph 31D. These terms apply even if the Arbitration of Disputes paragraph is not initialed.**

**31. ARBITRATION OF DISPUTES:**
  **A. The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Agents(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Agent. The arbitration shall be conducted through any arbitration provider or service mutually agreed to by the Parties, OR** ☐ **_____. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the Parties mutually agree to a different arbitrator. Enforcement of, and any motion to compel arbitration pursuant to, this agreement to arbitrate shall be governed by the procedural rules of the Federal Arbitration Act, and not the California Arbitration Act, notwithstanding any language seemingly to the contrary in this Agreement. The Parties shall have the right to discovery in accordance with Code of Civil Procedure § 1283.05. The arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction.**
  **B. EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) Any matter that is within the jurisdiction of a probate, small claims or bankruptcy court; (ii) an unlawful detainer action; and (iii) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985.**
  **C. PRESERVATION OF ACTIONS: The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.**
  **D. AGENTS: Agents shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Agents(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.**
  **E. "NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

  **"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

Buyer's Initials _G f_ _ / _____         Seller's Initials _____ / _____

RPA 12/21 (PAGE 14 OF 16)          Buyer's Initials _G f_ / _____    Seller's Initials _FHBT_ _____

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 14 OF 16)
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com      6217 Cahalan Ave

**EXHIBIT A**

Case: 20-50454    Doc# 368    Filed: 10/03/22    Entered: 10/03/22 13:27:29    Page 20 of 32

DocuSign Envelope ID: EF98AEC7-E12E-4DD0-8C9A-6FBA8A573C29

Property Address: *6217 Cahalan Ave, San Jose, CA  95123-4505*                                    Date: *April 19, 2022*

**32. BUYER'S OFFER**

**A. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless by the date and time specified in **paragraph 3C**, the offer is Signed by Seller and a Copy of the Signed offer is Delivered to Buyer or Buyer's Authorized Agent. **Seller has no obligation to respond to an offer made.**

**B.** ☐ **ENTITY BUYERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**
    (1) One or more Buyers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.
    (2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 28** for additional terms.
    (3) The name(s) of the Legally Authorized Signer(s) is/are: _____, _____ .
    (4) If a trust, identify Buyer as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust). If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____
_____ .

**C.** The RPA has 16 pages. Buyer acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

**D. BUYER SIGNATURE(S):**

(Signature) By, _~GHAZI FARWANA~_____     **Date:** 04/19/2022
    A4B072E88F05460
Printed name of BUYER: *Ghazi Farwana*_____
    ☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____
(Signature) By, _____     **Date:** _____
Printed name of BUYER: _____
    ☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____
☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

**33. ACCEPTANCE**

**A. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property or has the authority to execute this Agreement. Seller accepts the above offer and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement and authorizes Agent to Deliver a Signed Copy to Buyer.
**Seller's acceptance is subject to the attached Counter Offer or Back-Up Offer Addendum, or both, checked below.**
Seller shall return and include the entire agreement with any response.
    ☐ **Seller Counter Offer** (C.A.R. Form SCO or SMCO)
    ☐ **Back-Up Offer Addendum** (C.A.R. Form BUO)

**B.** ☐ **Entity Sellers: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure form (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**
    (1) One or more Sellers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.
    (2) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 28** for additional terms.
    (3) The name(s) of the Legally Authorized Signer(s) is/are: _____, _____ .
    (4) If a trust, identify Seller as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust). If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____
_____ .

**C.** The RPA has 16 pages. Seller acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

**D. SELLER SIGNATURE(S):**

(Signature) By, _Fred Hjelmeset, Bk Trustee_____     **Date:** 19-Apr-22
    69BBD56AD7E64B9...
Printed name _____
    ☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____
(Signature) By, _____     **Date:** _____
Printed name of SELLER: _____
    ☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____
☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

---

**OFFER NOT ACCEPTED:** _____/_____ No Counter Offer is being made. This offer was not accepted by Seller _____ (date)
    Seller's Initials

---

**RPA 12/21 (PAGE 15 OF 16)**          Buyer's Initials _G_ / _____          Seller's Initials _FHBT_ / _____     

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 15 OF 16)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com          6217 Cahalan Ave

**EXHIBIT A**

Case: 20-50454   Doc# 368   Filed: 10/03/22   Entered: 10/03/22 13:27:29   Page 21 of 32

DocuSign Envelope ID: EF98AEC7-E12E-4DD0-8C9A-6FBA8A573C29

Property Address: *6217 Cahalan Ave, San Jose, CA 95123-4505*                    Date: *April 19, 2022*

**REAL ESTATE BROKERS SECTION:**

1. **Real Estate Agents are not parties to the Agreement between Buyer and Seller.**
2. **Agency relationships are confirmed as stated in paragraph 2.**
3. **Cooperating Broker Compensation:** Seller's Broker agrees to pay Buyer's Broker and Buyer's Broker agrees to accept, out of Seller's Broker's proceeds in escrow, the amount specified in the MLS, provided Buyer's Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Seller's Broker and Buyer's Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.
4. **Presentation of Offer:** Pursuant to the National Association of REALTORS® Standard of Practice 1-7, if Buyer's Agent makes a written request, Seller's Agent shall confirm in writing that this offer has been presented to Seller.
5. **Agents' Signatures and designated electronic delivery address:**

   **A.** Buyer's Brokerage Firm *Compass*                                       Lic. # *01527235*
   By _Yasir Aladdin_ _____  *Yasir Aladdin* Lic. # *02003197*   Date 04/19/2022
   By _____ Lic. # _____ Date _____
   ☐ More than one agent from the same firm represents Buyer. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
   ☐ More than one brokerage firm represents Buyer. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

   **Designated Electronic Delivery Address(es):**
   Email _____ Text # _____
   Alternate: _____
   ☐ if checked, Delivery shall be made to the alternate designated electronic delivery address only.
   Address _____ City _____ State _____ Zip _____

   **B.** Sel_~~ero~~ Real Estate Services (Off.Lic#01354442)_ Lic. # _____
   By _Sean Buchanan_ _____ *Chris Buchanan 02068778 & Sean* Lic. # _____ Date 19-Apr-22
   By _____ Lic. # _____ Date _____
   ☐ More than one agent from the same firm represents Seller. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
   ☐ More than one brokerage firm represents Seller. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.

   **Designated Electronic Delivery Address(es)** (To be filled out by Seller's Agent)**:**
   Email _____ Text # _____
   Alternate: _____
   ☐ if checked, Delivery shall be made to the alternate designated electronic delivery address only.
   Address _____ City _____ State _____ Zip _____

**ESCROW HOLDER ACKNOWLEDGMENT:**

Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ), Counter Offer numbers _____ and _____ , and agrees to act as Escrow Holder subject to **paragraph 19** of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised by _____ that the date of Acceptance of the Agreement is _____
Escrow Holder *First American Title Company* _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Financial Protection and Innovation, ☐ Department of Insurance, ☐ Department of Real Estate.

**PRESENTATION OF OFFER:** _____ / _____ Seller's Brokerage Firm presented this offer to Seller on _____ (date).
                          Agent or Seller Initials

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**RPA 12/21 (PAGE 16 OF 16)**                Buyer's Initials ____ / ____    Seller's Initials  

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 16 OF 16)**

**EXHIBIT A**

DocuSign Envelope ID: EF98AEC7-E12E-4DD0-8C9A-6FBA8A573C29

April 19, 2022

## SELLER'S COUNTER-OFFER TO PURCHASE CONTRACT
## FOR 6217 CAHALAN AVE, SAN JOSE, CA 95123

This Seller's Counter-Offer shall amend, as noted below, the provisions of that certain "California Residential Purchase Agreement and Joint Escrow Instructions" dated April 19, 2022 ("Agreement") for real property commonly referred to as 6217 Cahalan Ave, San Jose, CA 95123 ("Property"), by and between: (i) Frode Hjelmeset a/k/a Fred Hjelmeset, solely in his capacity as the Chapter 7 Trustee of the bankruptcy estate of Gregory R. Dougald ("Seller"); and (ii) Ghazi Farwana ("Buyer"), as follows:

1.      Notwithstanding anything in the Agreement to the contrary, the provisions of this Counter-Offer shall control.

2.      The Seller of the Property is Chapter 7 Trustee of the estate of Gregory R. Dougald ("Debtor"), Case No. 20-50454 MEH, pending before the United States Bankruptcy Court, Northern District of California, San Jose Division ("Court").

3.      The Seller shall seek a finding that the Buyer (or, if appropriate, a successful overbidder) is a good faith purchaser pursuant to 11 USC Section 363(m).

4.      The sale of the Property is subject to Court Approval. All sales are subject to higher and better offer. Seller will seek Court approval of a sale of the Property to Buyer. The decision of the Court not to approve the sale of the Property to the Buyer shall not constitute a breach of the Agreement or this Counter-Offer by the Seller. "Approval" as used in this Counter-Offer means entry of one or more orders by the Court approving the sale, including such approval as is necessary to sell and convey title. It is estimated that the time period for approval is from 30 to 60 days. Buyer's possession shall occur ONLY upon recordation of a deed transferring ownership of the Property to the Buyer.

5.      Seller is selling and Buyer is purchasing the Property (and any personal property in the Property) in its present "as is/ where is" condition without representation or warranties of any kind. Buyer is not relying on Seller or Seller's agents as to the condition or safety of the Property and/or any improvements thereon, including but not necessarily limited to electrical, plumbing, heating, sewer, roof, air conditioning, foundations, soils and geology, lot size, boundary locations, or suitability of the Property and/or its improvements for particular purposes, or that any components of the Property are in working order, or that improvements are structurally sound and/or in compliance with any city, county, state, and/or federal statutes, codes, or ordinances. Seller will not be obligated to make any changes, alterations, or repairs to the Property. Any reports or corrective work required by Buyer's lender is to be the sole responsibility of Buyer. The closing of the transaction shall constitute acknowledgment by Buyer that the premises are accepted without representation or warranty of any kind and in their present "as is" condition based solely on Buyer's own inspections and investigations. Seller does not warrant existing structures as to habitability or suitability for occupancy. Buyer assume responsibility to check with appropriate planning authority regarding Buyer's intended use of the Property and agrees to hold Seller and Seller's agents harmless as to Buyer's intended use.

1

**EXHIBIT B**

6.     Paragraph 3(B) (COE) of the Agreement is deleted in its entirety, as are all other references to a Closing Date or similar phrase or term in the Agreement, and are replaced as follows: "Escrow shall close within 14 days following Court approval of the sale, unless extended by mutual written agreement of the parties."

7.     Paragraph 3(P)(1) of the Agreement is revised as follows: "The Seller will convey to Buyer, without any representations or warranties, as is/ where is, the personal property that is in the Property as of the date this Counter-Offer is mutually executed."

8.     Paragraph 3(Q)(7) of the Agreement is revised as follows: "Escrow and Title services for the sale shall be provided by Lawyers Title Company, Rosa Anna Juarez, Escrow Officer, 20520 Prospect Road, Suite 390, Saratoga, CA 95070, RosaAnna.Juarez@LTIC.com /TEAMMartha@LTIC.com, (408) 588-3858."

9.     Paragraph 3(Q)(18) of the Agreement is revised as follows: "The Seller will purchase a home warranty from a vendor selected by the Buyer for an amount not to exceed $500.00."

10.    Seller has no information about the condition of the Property.  Pursuant to California Civil Code Section 1102.2, the Seller shall provide no reports or provide any disclosures with regard to the Property. As a result, the following provisions of the Agreement are hereby deleted as they relate to the Seller: Paragraphs  11 (A), (B), (C), (D), (K), (L) and (M), 13(D), 14(A) and all other provisions in the Agreement that require the Seller to provide any reports and/or make disclosures concerning the Property.

11.    Paragraph 14 (B) of the Agreement is deleted in its entirety and revised as follows:

(a) "By no later than **5:00 pm, PDT, April 20, 2022**, Buyer shall withdraw all contingencies in the Agreement and this Counter-Offer concerning or related to the Property and deliver the $45,000 initial deposit amount to Escrow; and

(b)  " Buyer shall return to Seller's agents fully executed copies of all disclosures with his acceptance of this Counter Offer."

12.    Paragraph 18 (A) of the Agreement is replaced as follows: "Commissions shall be paid only upon Court approval of the sale of the Property and only from the proceeds of sale of the Property. If an approved sale does not close and fund, no commission shall be due or paid."

**BALANCE OF PAGE LEFT INTENTIONALLY BLANK**

2

13.    Paragraphs 30 and 31 of the Agreement are deleted and replaced as follows: "This Agreement shall be construed in accordance with the laws of the State of California, except to the extent it is controlled by the federal bankruptcy laws. The parties agree that the Court shall have exclusive jurisdiction over any dispute arising out of the Counter-Offer and the Agreement, including, but not limited to the interpretation and enforcement of Counter-Offer and the Agreement, and, if necessary, to effect the Court's jurisdiction, and by your signature on this Agreement, you hereby stipulate to an order providing for such jurisdiction.

DATED:   April 19, 2022          ESTATE OF GREGORY R. DOUGALD, CASE NO. . 20-50454 MEH

By: _____
    Fred Hjelmeset, Bk Trustee
    Chapter 7 Trustee

DATED:   April 19, 2022

GHAZI FARWANA
GHAZI FARWANA

**APPROVED:**

DATED:   April 19, 2022          INTERO REAL ESTATE SERVICES

By: _____
    Sean Buchanan
    Agent for Seller

DATED:   April 19, 2022          COMPASS

By: _____
    Yasir Aladdin
    YASIR ALADDIN
    Agent for Buyer

3

DocuSign Envelope ID: EF98AEC7-E12E-4DD0-8C9A-6FBA8A573C29



## SELLER MULTIPLE COUNTER OFFER No. ___1___
**(C.A.R. Form SMCO, Revised 12/21)**

Date __04/19/2022__

This is a counter offer to the Purchase Agreement, OR ☐ Buyer Counter offer No. _____, ☐ Other _____ ("Offer"), dated __04/19/2022__, on property known as ___6217 Cahalan Ave, San Jose, CA 95123___ ("Property"), between ___Ghazi Farwana___ ("Buyer") and ___Fred Hjelmeset, BK Trustee___ ("Seller"). Buyer and Seller are referred to as the "Parties."

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   A. **The Liquidated Damages and Arbitration of Disputes paragraphs in the Offer each require initials by all Parties. If either of those paragraphs is not initialed by all Parties, that paragraph is excluded from the final agreement unless specifically referenced for inclusion in paragraph 1D of this or another Counter Offer.**
   B. Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer, but deposit amount(s) shall remain unchanged from the original Offer.
   C. Any previous unaccepted Seller Counter Offer is hereby withdrawn and revoked.
   D. **OTHER TERMS:**
      *1) Buyer to return disclosures and bk addendum signed.*
      *2) All other terms remain the same.*

   E. The following attached documents are incorporated into this Seller Multiple Counter Offer when Signed and Delivered by both Parties (if both Parties do not Sign and Deliver all attached addenda then any acceptance of this Seller Counter Offer is not valid):
      ☐ Addendum #_____ (C.A.R. Form ADM)
      ☐ Back Up Offer Addendum (C.A.R. Form BUO)
      ☐ Seller License to Remain in Possession Addendum (C.A.R. Form SIP) (occupancy up to 29 days)
      ☐ Seller Purchase of Replacement Property (C.A.R. Form SPRP)
      ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA)
      ☐ Residential Lease After Sale (C.A.R. Form RLAS) (occupancy for 30 or more days)
      ☐ Seller Intent to Exchange Addendum (C.A.R. Form SXA)
      ☐ Other _____  ☐ Other _____

2. **BINDING EFFECT:** Seller is making Multiple Counter Offers to other prospective Buyers on terms that may or may not be the same as in this Multiple Counter Offer. This Multiple Counter Offer does not bind Seller and Buyer unless all of the following occur in the times specified below: Seller Signs in **paragraph 5**, Buyer Signs in **paragraph 7**, Seller signs in **paragraph 8**, and Buyer receives a Copy of the Multiple Counter Offer with all of the signatures. (Note: Prior to the completion of all of the foregoing, Buyer and Seller shall have no duties or obligations for the purchase or sale of the Property.)

3. **EXPIRATION OF SELLER MULTIPLE COUNTER OFFER:** This Multiple Counter Offer shall be deemed revoked and the deposits shall be returned to Buyer unless by 5:00 PM on the third Day after the date Signed in **paragraph 5** (if more than one Seller, then the last date) (or by ___5___ ☐ AM/☒ PM on __04/20/2022__ (date)), (i) this Seller Multiple Counter Offer is Signed in **paragraph 7** by Buyer, and (ii) a copy of the Multiple Counter Offer Signed by Buyer is personally received by Seller or Seller's Authorized Agent.

4. **MARKETING TO OTHER BUYERS:** Seller has the right to continue to offer the Property for sale. Seller has the right to accept any other offer received, prior to Seller selection of this Multiple Counter Offer.

5. **OFFER: SELLER MAKES THIS MULTIPLE COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY. BY MAKING THIS COUNTER OFFER, ANY PREVIOUS OFFER OR COUNTER OFFER CAN NO LONGER BE ACCEPTED.** _____ those documents are incorporated into this Seller Multiple Counter Offer unless Otherwise Agreed.

   *Fred Hjelmeset, BK Trustee*
   6998D98A07E6489...

   ___Fred Hjelmeset, BK Trustee___ Date __19-Apr-22__
   _____ Date _____

6. **ACCEPTANCE OF SELLER MULTIPLE COUNTER OFFER:** Buyer's acceptance of this Seller Multiple Counter Offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless by 5:00 PM on the fourth Day after the date Seller Signs in **paragraph 5** (if more than one Seller, then the last date) (or by _____ ☐ AM/☐ PM on _____ (date) (i) it is Signed in **paragraph 8** by Seller, and (ii) a copy of this Seller Multiple Counter Offer signed by Seller in **paragraph 8** is personally received by Buyer or Buyer's Agent who is authorized to receive it.

© 2021, California Association of REALTORS®, Inc.

**SMCO REVISED 12/21 (PAGE 1 OF 2)**

**SELLER MULTIPLE COUNTER OFFER (SMCO PAGE 1 OF 2)**

**EXHIBIT B**

DocuSign Envelope ID: EF98AEC7-E12E-4DD0-8C9A-6FBA8A573C29

7. **ACCEPTANCE:** Buyer accepts the above Multiple Counter Offer (**If checked** ☐ **SUBJECT TO THE ATTACHED COUNTER OFFER No. _____**) and acknowledges receipt of a Copy.

_GHAZI FARWANA_
A4B272E6BE66480...              _Ghazi Farwana_   Date 04/19/2022

_____   Date _____

---

8. **SELECTION OF ACCEPTED MULTIPLE COUNTER OFFER:** By Signing below, Seller accepts this Multiple Counter Offer. **NOTE TO SELLER:** Do NOT Sign in this box until after Buyer Signs in **paragraph 7**. DO NOT Sign in this box if this Seller Multiple Counter Offer is subject to an attached Counter Offer.

_Fred Hjelmeset, Bk Trustee_
69B8D56AD7E64B9...              Date 19-Apr-22

_____   Date _____

---

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**SMCO REVISED 12/21 (PAGE 2 OF 2)**

**SELLER MULTIPLE COUNTER OFFER (SMCO PAGE 2 OF 2)**

**EXHIBIT B**

**Entered on Docket**
**May 16, 2022**
**EDWARD J. EMMONS, CLERK**
**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**



1  Gregg S. Kleiner (SBN 141311)
   RINCON LAW LLP
2  268 Bush Street, Suite 3335
   San Francisco, CA 94104
3  Tel.  415-672-5991
4  Fax. 415-680-1712
   gkleiner@rinconlawllp.com
5
   Counsel for
6  FRED HJELMESET,
   Trustee in Bankruptcy
7

**The following constitutes the order of the Court.**
**Signed: May 16, 2022**

*M. Elaine Hammond*
_____
**M. Elaine Hammond**
**U.S. Bankruptcy Judge**

8            UNITED STATES BANKRUPTCY COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                 SAN JOSE DIVISION

11 In re                              Case No. 20-50454 MEH
                                      Chapter 7
12    GREGORY R. DOUGALD              Hon. M. Elaine Hammond
      *aka* GREGORY ROSS DOUGALD,
13                                    **ORDER AUTHORIZING TRUSTEE TO:**
14              Debtor.               **(I) SELL REAL PROPERTY, SUBJECT**
                                      **TO OVERBID; (II) PAY LIENS, COSTS**
15                                    **OF SALE, REAL ESTATE**
                                      **COMMISSION AND TAXES; AND**
16                                    **(III) PAY DEBTOR HOMESTEAD**
                                      **EXEMPTION**
17                                    **(6217 Cahalan Avenue,**
                                      **San Jose, CA  95123)**
18

19

20        The Court, having reviewed and considered: (i) the Motion to: (I) Sell Real Property, Subject

21 to Overbid; (II) Pay Liens, Costs of Sale, Real Estate Commission and Taxes; and (III) Pay Debtor

22 Homestead Exemption (6217 Cahalan Avenue, San Jose, CA  95123) [Docket 334] ("**Motion**"),

23 filed by Fred Hjelmeset, Chapter 7 Trustee of the above-named Debtor; (ii) the Trustee's request

24 for entry of order approving the Motion; (iii) the Declaration of Gregg S. Kleiner in support thereof,

25 notice of the Motion being adequate and proper under the circumstances and other good cause

26 appearing

27        IT IS HEREBY ORDERED THAT

28        1.    The Motion is approved in all respects in accordance with the terms of this Order.

2.  The Trustee is authorized to:

    a.  enter into the California Residential Purchase Agreement and Joint Escrow Instruction and related amendments and addendum (collectively, the "**Agreement**") for the sale of 6217 Cahalan Avenue, San Jose, CA 95123 ("**Property**"). A copy of the Agreement is attached as Exhibit B to the Motion. The Legal Description for the Property is attached to this Order as **Schedule 1**; and

    b.  execute all documents necessary to consummate the Agreement and complete the sale of the Property, including, but not limited to, conveying the Property to the buyer.

3.  Without further order from this Court, the Trustee is authorized to:

    a.  sell the Property to Ghazi Farwana ("**Buyer**") for $1,575,000, with the sale of the Property "As-Is, Where-Is," with no representations or warranties;

    b.  pay, from the Property sale proceeds only, the payoff demand submitted by Star One Credit Union, or its successors and assigns ("**Bank**"), as relates to the Bank's promissory note secured against the Property;

    c.  pay, from the Property sale proceeds only, any real property taxes secured by the Property;

    d.  pay, from the Property sale proceeds only, all outstanding obligations due to the Property's homeowners' association, if any, through the date of closing;

    e.  pay, from the Property sale proceeds only, all other liens and claims secured against the Property;

    f.  pay, from the Property sale proceeds only, a commission equal to 5% of the gross sale price ($78,750), to be divided between the estate's broker, Intero Real Estate ("**Intero**") and the Buyer's broker;

/ / /

2

**EXHIBIT C**

| | |
|---|---|
| 1 | g. pay, from the Property sale proceeds only, such liens, fees and costs |
| 2 | related to the sale, as provided in the Agreement and as is customary for |
| 3 | these types of transactions, including reimbursing Intero and/or its agents |
| 4 | for out-of-pocket expenses advanced by Intero for home inspections, |
| 5 | termite inspections, etc., in an amount not to exceed $2,300; |
| 6 | h. pay, from the Property sale proceeds only, all of the estate's capital gains |
| 7 | obligations from the sale of the Property and any other tax obligations |
| 8 | related to or arising from the sale of the Property; |
| 9 | i. pay, from the Property sale proceeds only, miscellaneous costs, including |
| 10 | those related to a home warranty, smoke detectors, carbon monoxide |
| 11 | detectors, etc.; and |
| 12 | j. pay, from the Property sale proceeds only, the Debtor's homestead |
| 13 | exemption in the amount of $100,000. |
| 14 | 4. The Court, having reviewed and considered the Declaration of Ghazi Farwana |
| 15 | [Docket 337] in support of a good faith purchaser finding, approves the Buyer as a buyer in good |
| 16 | faith in accordance with Section 363(m) of the Bankruptcy Code and the Buyer shall be entitled to |
| 17 | all of the protections provided to a good faith buyer under 11 U.S.C. § 363(m). |
| 18 | 5. In the event that the Buyer does not timely close the transaction, the Trustee is |
| 19 | authorized, without need of further notice, a hearing, or further order of this Court, to sell the |
| 20 | Property on substantially the same terms and conditions and at the same price to an alternative |
| 21 | purchaser. |
| 22 | 6. This order is effective upon entry and the stay otherwise imposed by Rule 62(a) of |
| 23 | the Federal Rules of Civil Procedure and/or Bankruptcy Code Section 6004(h) shall not apply. |
| 24 | / / / |
| 25 | / / / |
| 26 | / / / |
| 27 | / / / |
| 28 | / / / |

**Schedule 1 to Order**
**Legal Description**

For APN/Parcel ID(s): 695-10-010

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN JOSE, COUNTY OF SANTA CLARA, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 36, AS SHOWN UPON THAT CERTAIN MAP ENTITLED, TRACT NO. 5213 WHICH MAP WAS FILED FOR RECORD IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SANTA CLARA, STATE OF CALIFORNIA, ON JULY 31, 1972, IN BOOK 305 OF MAPS AT PAGE(S) 34 AND 35.

EXCEPTING THEREFROM THE UNDERGROUND WATER OR RIGHTS THERETO WITH NO RIGHTS OF SURFACE ENTRY, AS SAN JOSE WATER WORKS, A CALIFORNIA CORPORATION RECORDED SEPTEMBER 9, 1972 BOOK 0014 OF OFFICIAL RECORDS, PAGE 94.

***\*\*\* END OF ORDER \*\*\****

| | |
|---|---|
| 1 | *** COURT SERVICE LIST *** |
| 2 | No Court service required. |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |